Los Esposos Miguel A. Jordán y María E. Rojas de Jordán, demandantes y recurrentes, *v.* Los Esposos Antonio Padró y Sarah González de Padró y Berens Mortgage Bankers, Inc., demandados y recurridos.

*Número:* R-75-6 *Resuelto:* 12 de mayo de 1975

*Angel F. Vélez Pozo,* abogado de los recurrentes; *Eduardo Ortiz Delgado,* abogado de Antonio Padró y Sarah González de Padró.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Inspirado en el axioma jurídico filosófico de que la ley es un instrumento de la justicia, y no viceversa, el presente caso reitera el principio de que un tercero que invoque la fe registral debe, al momento de adquirir su derecho real, tener buena fe.

La cápsula de los hechos considerados probados por el tribunal de instancia al dictar la sentencia parcial que revisamos es como sigue:

Los recurrentes esposos Jordán-Rojas suscribieron en 2 de marzo de 1965 un convenio con la codemandada Larco Beach Development Corp., en lo sucesivo Larco, para la compraventa de (¹) un solar y casa en la Urbanización San Demetrio, Vega Baja, Puerto Rico. Transcurrieron varios años y en abril de 1971 Larco se dirigió a éstos gestionando la firma de un nuevo contrato en el cual se variaba el precio original convenido, mediante un aumento de $6,300 adicionales y $6.00 cada metro en exceso de la cabida básica. Los recurrentes se negaron a aceptar tales cambios informando a la urbanizadora el 5 de mayo de 1971 su interés en adquirir la propiedad y su disposición de discutir cualquier modificación permisible conforme a los términos del contrato inicial.

---

(¹)La cláusula 2 disponía: "EL COMPRADOR se compromete y obliga a comprar de LA VENDEDORA y ésta a su vez se obliga y compromete a vender . . . ."

El 13 de julio de 1971 los codemandados recurridos esposos Padró-González firmaron con Larco un contrato similar de compraventa sobre la misma propiedad. En vista de ello, los recurrentes radicaron la presente acción el 10 de diciembre de 1971 exigiendo cumplimiento específico del contrato, daños y la anulación del contrato con los esposos Padró-González, incluyendo como demandados a Larco, los esposos Padró-González y a la entidad financiadora Berens Mortgage Bankers, Inc., denominada en adelante Berens. Larco fue emplazada el 23 de diciembre de 1971, Padró el 7 de marzo de 1972 y Berens en una fecha cercana a esta última.

No obstante, los demandados llevaron a cabo la transacción mediante escritura pública titulada Segregación, Liberación y Compraventa, otorgada el 16 de mayo de 1972 y subsiguientemente inscribieron su título en el Registro como finca independiente.

El tribunal a quo dictó sentencia sumaria *parcial* desestimatoria a solicitud de los esposos Padró y la financiadora Berens por el fundamento de que la acción de los recurrentes([2]) no era de naturaleza real sino personal en daños "excontractu" ejecutable únicamente contra Larco. Bajo las circunstancias específicas presentes, erró el tribunal de instancia. Veamos.

Tal como concluyó el tribunal a quo, los contratos otorgados por los recurrentes y los recurridos esposos Padró con Larco al momento de la radicación de la demanda eran similares y en derecho constituian ". . . contrato[s] de promesa bilateral de compra y venta como contrato[s] preparatorio[s] o pre-contrato[s]."

---

([2]) Salvo los casos excepcionados por ley, hemos resuelto que al Registro de la Propiedad sólo tienen acceso los derechos reales que recaigan sobre bienes inmuebles y por ende los personales no son inscribibles. *Ortiz* v. *Registrador*, 82 D.P.R. 501, 504 (1961). Sin embargo, en *Martínez* v. *Registrador*, 101 D.P.R. 308 (1970) dimos paso a una anotación de un aviso de demanda (*lis pendens*) bajo las disposiciones del Art. 91 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 455) aun tratándose de una acción personal surgida de una opción de compra.

El Art. 1340 de nuestro Código Civil dispone:

"La promesa de vender o comprar habiendo conformidad en la cosa y en el precio, *dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato.* Siempre que *no pueda cumplirse la promesa* de compra y venta, regirá para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el presente subcapítulo." (31 L.P.R.A. sec. 3747; énfasis suplido.)

■ En virtud de este precepto y siguiendo la doctrina tradicional española hemos resuelto que los efectos de una promesa de comprar y vender—conceptuada como un contrato preparatorio o pre-contrato—no pueden coincidir con los de una venta actual, absoluta y consumada por lo cual de su incumplimiento dimana una acción personal, no real, del comprador contra el promitente (vendedor). Tal promesa de venta no confiere título de dominio sobre la propiedad en litigio, ([3]) *García* v. *De Jesús,* 79 D.P.R. 147, 152 (1956).

■ Este enfoque fue reafirmado en *Rossy* v. *Tribunal Superior,* 80 D.P.R. 729 (1958), del cual citamos "in extenso" lo siguiente por resumir adecuadamente la cuestión:

"Aunque el contrato de compraventa no produce por sí solo la transferencia del dominio, constituye un título apto para transferir la propiedad cuando tenga lugar la entrega o tradición (real o fingida) de manos del vendedor al comprador. En cambio, el futuro adquirente de la cosa en el contrato de promesa bilateral de compra y venta no adquiere el dominio mediante la tradición, ni el derecho de inscribir en el Registro de la Propiedad, ni van a su cargo los frutos y el riesgo de la pérdida. El promitente sigue siendo el propietario a todos los

---

([3]) La tésis del demandante recurrente esbozada en primera instancia y ante nos, parte de la premisa errónea de que el contrato era uno de *opción.* Bajo tal postulado argumenta que validó su ejercicio con la radicación de la demanda y culminó la compraventa. *Pérez* v. *Sampedro,* 86 D.P.R. 526 (1962). En cuanto a la figura jurídica del contrato de opción, consúltese *Rosa Valentín* v. *Vázquez Lozada,* 103 D.P.R. 786, resuelto en el día de hoy, y en el cual exponemos la posición de este Tribunal respecto a los enfoques doctrinarios de esta figura y sus efectos jurídicos.

efectos legales: conserva el derecho de administración y de disfrute *y si se vende la cosa a un tercero, éste se convierte en propietario y el beneficiario de la promesa solo podrá reclamar los daños y perjuicios. Esta solución se deriva del hecho de que la promesa bilateral de compra y venta no crea ningún derecho real, sino una simple obligación de hacer.* En otras palabras *el derecho del comprador eventual no es más que un derecho personal.*

Como indica Roca Sastre en sus Estudios de Derecho Privado (Vol. 1, pág. 323–362), la promesa de venta bilateral tiene la utilidad o ventaja práctica de conseguir una vinculación inmediata de las partes, cuando por determinada circunstancia no puede llevarse a cabo una compraventa completa y definitiva. Mediante la vinculación inmediata, las partes logran la garantía y seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. Por eso la promesa de venta es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que solo tiene por objeto la realización de un contrato de compraventa futura. Carece de finalidad o trascendencia traslativa de dominio, a diferencia de la compraventa en sí, ya que las partes no se obligan de momento a trasmitir la cosa objeto de la promesa. Así lo declara la sentencia del Tribunal Supremo de España de 14 de noviembre de 1927 (178 Jur. Civ. 317) al decir que '. . . la promesa de comprar o vender, mediando conformidad en la cosa y en el precio, faculta a los contratantes, según el párrafo primero del artículo 1451 del Código Civil [equivalente al 1340 del nuestro] para reclamar recíprocamente su cumplimiento, puesto que . . . de ella surge el doble y recíproco vínculo que trueca en bilateral la obligación, que sin dicha circunstancia ligaría sólo la voluntad del promitente, pero teniendo en cuenta la característica de esta modalidad contractual, preparatoria tan solo de la compraventa, o sea, la de no trasmitir el dominio de la cosa objeto de la promesa hasta que ésta no tiene cumplimiento, y que por ser éste un hecho futuro podría sobrevenir la imposibilidad de cumplirla, el legislador equipara en el párrafo segundo del Artículo 1451, del Código Civil este incumplimiento fortuito al voluntario de alguno de los obligados, y autoriza la resolución del pacto con sujeción a las reglas generales de las obligaciones . . .' (Pág. 329). La distinción entre la promesa de venta bilateral y la compraventa propia fue establecida definitivamente en la sentencia de

ese mismo Tribunal de 11 de noviembre de 1943, 4 Jur. Civ. (2ª.s.) 283, en que fue ponente Don José Castán Tobeñas. Allí se declara que, según el art. 1451 del Código Civil Español (1340 del nuestro): '. . . hay que aceptar la concepción de la promesa bilateral de comprar y vender como un contrato preparatorio . . . que tiene por objeto la futura celebración de una compraventa y cuyos efectos no pueden coincidir en absoluto con los de la venta actual y definitiva.' (Pág. 298.)

*Ante la negativa de una de las partes a cumplir un precontrato, cabe una acción para exigir su cumplimiento específico y no meramente una acción para el resarcimiento de perjuicios,* si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes. En principio, *siempre que no exista una imposibilidad de hecho, puede exigirse el cumplimiento 'in natura' de la obligación de otorgar un nuevo contrato de compraventa. Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública.* [citas omitidas] Pero esta acción siempre es de carácter personal, ya como declara la sentencia del Tribunal Supremo de España de 6 de diciembre de 1904 (99 Jur. Civ. 501): '. . . *Es evidente que quien promete vender una cosa no transfiere la propiedad de la misma hasta que realiza la promesa; que mientras tanto ningún derecho adquiere en la cosa aquel en cuyo beneficio se hace en la promesa, teniendo solo acción personal para exigir el cumplimiento de lo prometido* . . . (y sería imposible) atender a disposiciones y principios que se refieren al caso de haberse adquirido real y legalmente la cosa de que se trata . . . *por no ser dable perseguirla por acción real.*' (Págs. 515–16.) De igual modo la doctrina constante de nuestra jurisprudencia ha sido que la promesa de venta solo da lugar a una acción personal." Págs. 741–744. (Énfasis suplido.)

■ Ahora bien, surgiendo que al momento de la radicación y notificación de la demanda de los recurrentes exigiendo el cumplimiento específico de la promesa de vender y la nulidad de la suscrita por los esposos Padró, no se había consumado la

segunda promesa bilateral de compraventa de Larco—pues hemos visto que la Escritura se otorga con posterioridad—forzoso es concluir que en dicha etapa, jurídica y factualmente era posible que se culminara la promesa ya convenida entre los recurrentes y Larco. Siendo contratos similares, no podían los recurridos hacer abstracción de tal realidad y descansar en la preferencia unilateral del vendedor. La presencia del elemento de buena fe de un tercero registral es al momento de hacer su adquisición pues es en dicha etapa que su voluntad se manifiesta a través del consentimiento.

No enerva la causa de acción de los recurrentes la posición de los codemandados recurridos esposos Padró y Berens la cual está basada en el Art. 1362 del Código Civil, el cual dispone:

"Si una misma cosa se hubiere vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe si fuere mueble.

Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe." (31 L.P.R.A. sec. 3822.)

■ Desde principios de siglo, dimos vigencia a la norma de que la aplicación de este precepto exige y está subordinado a la existencia de buena fe del que inscribe; esto es, el desconocimiento de la venta previa. *Ramos* v. *Orcasitas*, 14 D.P.R. 68, 79 (1908); *Quintana Reyes* v. *La Capital de P.R.*, 51 D.P.R. 106 (1937); *Pacheco* v. *Plazuela Sugar Co.*, 56 D.P.R. 496 (1940). "[E]llo ha de ser especialmente aplicable cuando la incertidumbre nace de las reclamaciones judiciales en marcha, que podrán desvirtuar el derecho a titularidad del transferente; pues el conocimiento que malogra la buena fe nace en el momento en que el bien se adquiere y se inscribe vigente la anotación, permanece mientras dure el pleito, y su

apreciación es cuestión de hecho, como dicen las Sentencias de 11 de febrero de 1946 y 11 de junio de 1954." I Badenes Gasset, R., *El Contrato de Compraventa;* pág. 583 (1969). (⁴)

 El principio de que la prioridad registral no puede desvincularse del criterio general de buena fe amparando *la mala* por el cumplimiento de una mera formalidad, es de estricta aplicación al caso de autos. Los demandados recurridos esposos Padró y la financiadora Berens debidamente notificados de la acción en cumplimiento específico de contrato presentada por los recurrentes, no pueden oponer como defensa el precepto que nos ocupa. Si bien se trata de una acción personal, es una encaminada a obtener en última instancia la modificación jurídica de carácter real, y como dijimos en *Martínez,* supra, "[n]o hay duda de que de triunfar el demandante en sus pretensiones de que se reconozca el ejercicio de su derecho . . . a la compra, el tribunal ordenaría el otorgamiento de la correspondiente escritura de compraventa sobre la propiedad en cuestión." Pág. 314. Parafraseado este argumento, no hay duda de que de no haber los demandados recurridos otorgado la escritura con Larco, de prevalecer la demanda, los recurrentes tendrían derecho a su otorgamiento, y aquéllos no podrían ser acreedores a la protección de tercero registral.

En tal etapa, los recurridos carecían de un derecho real y lo único que podían solicitar de Larco era su ejecución específica o en la alternativa daños supletoriamente. Concluir que la mera formalidad del otorgamiento de escritura pública y su subsiguiente inscripción puede ampararlos bajo la tésis de tercero registral, no sólo es errónea sino ilógica e injusta. Contribuiría además a sostener que un vendedor individual o de propiedades en masa, está facultado para seleccionar, con-

---

(⁴) Véanse además: IV, Vol. II, Puig Peña, *Derecho Civil,* págs. 104–106 (1951); IV Castán Tobeñas, *Derecho Civil Español, Común y Foral*; págs. 109–11 (1961); X Manresa, *Comentarios*; págs. 261–271 (1969).

forme su mejor forma y criterio, a un comprador subsiguiente dejando al primero a las contingencias de un litigio en daños, que aun resultando a su favor, en la mayoría de los casos no compara con el beneficio de adquirir una propiedad en un mercado de valores espirales como es Puerto Rico. Ello se prestaría a distintas manipulaciones para obtener del fruto de la mala fe la cosecha del capital especulado.

*Por los fundamentos expuestos se dictará Sentencia revocando la sentencia sumaria parcial del Tribunal Superior, Sala de Bayamón de fecha 29 de noviembre de 1974.* ([5])

Los Jueces Asociados Señores Martín y Díaz Cruz concurren en el resultado.

---

([5]) Este dictamen en nada prejuzga la certeza de los hechos que están en controversia según las alegaciones de las partes cuya determinación estará sujeta a los trámites ulteriores del pleito; únicamente resuelve, bajo los hechos probados ante el tribunal de instancia hasta el presente, que los demandados recurridos no pueden quedar inmunes a tales alegaciones.