Feliciano Acevedo, Jueza Ponente
*946 TEXTO COMPLETO DE LA SENTENCIA
Mediante escrito de apelación, acuden ante nos Ricardo Camacho Ortiz, Evelyn Roídos Ramos y la Sociedad Legal de Gananciales compuesta por ambos, solicitando revoquemos la sentencia sumaria emitida el 17 de mayo de 2001 por el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo. En la sentencia apelada, el Honorable Juez Edgardo E. Rosario Cabrera declaró con lugar la demanda en cobro de dinero instada por la demandante, Kathryn Ann Miskimen Marks, en el mes de abril del año 2000.
I
No conforme con lo resuelto por el tribunal a quo, los apelantes levantan los siguientes señalamientos de error:

"Cometió error el Tribunal de Instancia al dictar sentencia en forma sumaria, a pesar de que hay un universo de hechos que están en controversia.

Cometió error el Honorable Tribunal de Instancia al resolver que para dejar sin efecto un contrato válido de una enajenación de un bien inmueble ganancial, no se requiere el consentimiento por escrito de ambos cónyuges.

Cometió error el Tribunal apelado al condenar a la parte demandada al pago de honorarios de abogado sin haber mediado temeridad de parte de los apelantes."

II
Las partes de epígrafe otorgaron, el 10 de julio de 1998, contrato de opción de compra de un solar ubicado en el municipio de Cabo Rojo propiedad de los apelantes. El término de la opción fue pactado por seis (6) meses y la prima otorgada por la optante, Kathryn Ann Miskimen Marks, fue de cinco mil dólares ($5,000.00). El acuerdo lee en la sección pertinente de la siguiente manera:

“B) DEVOLUCIONES: En caso de que LA PARTE COMPRADORA OPTANTE decida no ejecutar la presente Opción, o por cualquier causa imputable a dicha parte compradora, y el otorgamiento de la Escritura de Compraventa no se efectuare dentro del término especificado en el Apartado ‘G’ de este Contrato, entonces LA PARTE COMPRADORA OPTANTE perderá la prima antes especificada.” 

El 19 de abril de 2000, la apelada instó demanda en cobro de dinero contra los apelantes. En síntesis, la apelada alegó en la demanda que las partes habían acordado el mismo día del otorgamiento del contrato antes mencionado, que la prima de la opción sería devuelta en caso de no se llegase a ejercer la misma. Añadió que mediante carta con fecha de 20 de febrero de 1999, firmada por la codemandada Evelyn Roídos y la apelada, ambas partes prorrogaron el término de la opción por sesenta (60) días adicionales y reiteraron que en caso de que la optante desistiera de la compra del terreno, se le devolvería el dinero de la prima. Argüyó además la apelada que en varias ocasiones, previo a la presentación de la demandada, reclamó la devolución de los cinco mil dólares ($5,000.00). Por último, alegó que éstos no le habían sido devueltos y reclamó costas y honorarios de abogados.
III
El primer planteamiento de error cuestiona la procedencia de la sentencia sumaria emitida por el foro apelado. Los apelantes arguyen que existían controversias de hechos que impedían el pronunciamiento de una sentencia sumaria. Por su parte, la apelada alega que de los autos del caso ante el foro de instancia se desprendía que la única controversia en el mismo era de derecho y no de hechos. Añade en su escrito ante nos, que de existir alguna controversia sobre los hechos, sólo se relaciona con el número de identificación del terreno opcionado, lo cual no *947 es sustancial para la privación de la sentencia sumaria. Veamos.
La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, autoriza a los tribunales para que dicten sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor del promovente.
El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando surge de documentos no controvertidos que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. Neca Mortgage Corporation v. A & W Developers, S.E., 137 D.P.R. 860, 869 (1995); PZF Properties Inc. v. General Accident Insurance Company, 136 D.P.R. 881 (1994). Si los hechos no están en controversia y el pleito sólo presenta una cuestión de derecho, está en orden de disponer del asunto mediante sentencia sumaria. Tello Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987).
La parte promovente en una moción de sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede dictarse sentencia a su favor como cuestión de ley. La parte opositora viene obligada entonces a poner en controversia los hechos presentados por el promovente. Pilot Life Insurance Company v. Crespo Martínez, 136 D.P.R. 624 (1994). Como regla general, para derrotar una moción de sentencia sumaria no basta con la presentación de meras alegaciones; hay que presentar contradeclaraciones juradas y documentos que creen una genuina controversia sobre hechos materiales sustanciales. Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997).
Estudiosos del sistema procesal civil exponen que la moción de sentencia sumaria procede “aun cuando en las alegaciones existan controversias, si la parte que la promueve puede demostrar que, aun cuando de las alegaciones surja una aparente controversia, en el fondo, penetrando hasta la sustancia probatoria, esa controversia no existe.” Hernández Colón, Rafael, Derecho Procesal Civil, San Juan, Puerto Rico, Michie of P. R., 1997, pág. 207.
En el caso ante nos, la apelada evidenció los acuerdo entablados con los apelantes sobre la devolución del dinero otorgado como prima para el contrato de opción en caso de que ésta no se ejerciere. Además, demostró que la única controversia de hechos en el caso se refiere a una posible confusión en el número de identificación del solar objeto del contrato. El mismo aparece identificado en ocasiones como el solar número 11 y en otras instancias con el número VII. Pero, ambas partes incurrieron en el error, sin cuestionar la identidad del terreno. 
IV
El segundo planteamiento de error aduce que erró el tribunal a quo al resolver que para dejar sin efecto un contrato válido de enajenación de un bien inmueble ganancial, no se requiere el consentimiento por escrito de ambos cónyuges. Dicha parte iguala el contratO\de opción a un contrato de compraventa o enajenación de un bien inmueble ganancial. La parte apelada arguye que la prórroga no es una enajenación ilegal del bien antes descrito, sino que se trata de la modificación de una condición que no afecta el título, ya que el contrato de opción no crea un derecho real, sino que crea una obligación personal. Le asiste la razón a la parte apelada.
Debido a que nuestro Código Civil no reglamenta el contrato de opción, nuestro Tribunal Supremo ha adoptado las normas aplicables al mismo. Irizarry López v. García Cámara, 2001 J.T.S. 164, en la pág. 455. En Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796 (1975), nuestro Tribunal Supremo expresó que los contratos de opción de compra sólo crean una obligación personal por parte del promitente. Este se obliga a vender el bien acordado si el optante ejerce la opción dentro del plazo convenido. Los requisitos esenciales de este tipo de contrato son: (1) la concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta; (2) la concesión de modo exclusivo; (3) por plazo cierto; (4) y sin otra condición que el propio juicio del optante. Irizarry López v. García Cámara, supra, en la pág. 455; Rosa Valentín, supra, en las págs. 807-808. Una opción típica, implica que el poseedor del derecho tiene la iniciativa de *948 decidir, a su arbitrio y dentro de un plazo ya fijado, si se va a celebrar el contrato. Zeta Enterprises, Inc. v. E.L.A., 98 J.T.S. 23, en la pág. 640. La aceptación de la oferta de venta por el optante produce, no un contrato perfeccionado de compraventa, sino la obligación de parte del concedente de vender y de parte del optante de comprar la cosa objeto del contrato.
Nos comenta el profesor José Ramón Vélez Torres que “el contrato de compraventa suele confundirse con otros como la opción de compraventa y la promesa bilateral de compraventa. Sin embargo, la diferencia entre el primero y los segundos es marcada.” Vélez Torres, José R., Curso de Derecho Civil, Tomo IV, Vol. II, U.I.A., San Juan, 1990, en la pág. 142. Esto es así, porque no son contratos idénticos y sus consecuencias y efectos jurídicos no pueden ser iguales. Rossy v. Tribunal Superior, 80 D.P.R. 729, 740 (1958). Estos tres tipos de contratos generan derechos de obligación distintos. La obligación del comprador en la compraventa consiste en entregar la cosa que es objeto del contrato. Por otro lado, en el contrato de opción, la prestación de la obligación que se contrae consiste en hacer algo, en específicamente en mantener la oferta de venta por un tiempo determinado. Jordán Rojas v. Padró González, 103 D.P.R. 813, 817-818 (1975); Soto v. Rivera, supra, en la pág. 365; Dennis, Metro Invs. v. City Fed. Savings, 121 D.P.R. 197, 221 (1988). En la promesa bilateral de compraventa, la obligación consiste en otorgar, en el futuro, un contrato de compraventa. Vélez Torres, supra, en la pág. 142. Véase también, García v. De Jesús, 79 D.P.R. 147, 152 (1956).
En fin, el contrato de compraventa es uno principal, mientras que el contrato de opción es uno preparatorio, para la posible venta de la cosa que es objeto de contrato. Vélez Torres, supra, en la pág. 145; Irizarry López v. García Cámara, 2001 J.T.S. 164.
El Artículo 1313 del Código Civil, 31 L.P.R.A. § 3672, requiere el consentimiento por escrito de ambos cónyuges para la enajenación de bienes muebles e inmuebles gananciales. En el caso de marras, las partes suscribieron un contrato de opción de compra, con el cual sólo adquieren una obligación personal. No se trata de un acto dispositivo de un bien inmueble, sino más bien de un acto preparatorio para la posible y eventual venta del bien acordado. Ambos habían consentido al acuerdo, y posteriormente, según lo que se desprende de los autos del caso, el señor Camacho Ortiz no se opuso a la prórroga concedida por su esposa sobre el contrato de opción. La reclamación de la apelada se circunscribe a la devolución de la prima entregada, sobre la cual las partes acordaron su devolución de no ejercerse la opción.
V
Nos resta entonces analizar el señalamiento de error de la apelante dirigido a impugnar la determinación del tribunal de instancia al imponerle en su sentencia el pago de honorarios de abogados.
Nuestro ordenamiento procesal civil sanciona la temeridad de un litigante perdidoso: (a) mediante la imposición del pago de honorarios de abogado bajo la Regla 44.1(d), en todo tipo de acciones, pues dicha regla no hace excepciones, y (b) mediante la imposición de intereses, computados desde una fecha anterior a la de la sentencia, en dos clases de acciones, a saber, casos de cobro de dinero y en casos de daños y perjuicios. Colondres Vélez v. Bayron Vélez, 114 D.P.R. 833, 842-843 (1983). En cuanto a esto, sabemos que cuando un tribunal impone honorarios por temeridad, dicha imposición constituye una determinación implícita de temeridad. Sucn. Arroyo v. Municipio, 81 D.P.R. 435 (1959); Insurance Co. of P.R. v. Tribunal Superior, 100 D.P.R. 405, 409-410 (1972).
Nuestras Reglas de Procedimiento Civil carecen de una definición del concepto de “temeridad”. La jurisprudencia, en su función interpretativa, se ha encargado de delimitar los contornos del término. De esta forma, ha señalado que “la acción que amerita la condena de honorarios es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. ” Elba v. U.P.R., 125 D.P.R. 294, 329 (1990). Dicho de otra forma, “la temeridad ‘es una actitud que se proyecta sobre el procedimiento y afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exhorbitante (sic) *949 para su peculio’.” Velázquez Ortiz v. U.P.R., 128 D.P.R. 234, 237 (1991), citando a H. Sánchez Martínez, Rebelde sin Costas, Año 4 (Núm. 2) Boletín Judicial (abril-junio 1982). Véase además, Pérez v. Colegio de Cirujanos Dentistas de P.R., 131 D.P.R. 545, 562-564 (1992); y Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 349-350 (1989). También se ha dicho que un litigante es frívolo cuando sus argumentos o curso de acción en un pleito no tienen razón de ser, méritos, peso o lógica alguna. Departamento de Recreación y Deportes v. Asociación Recreativa Round Hill, Inc., 99 J.T.S. 138. Por el contrario, cuando no existe una actitud temeraria, los tribunales no pueden condenar al pago de honorarios por el mero hecho de que una parte no ha resultado victoriosa. Feliciano v. Feliciano, 99 J.T.S. 23. Nuestro más alto foro judicial ha expresado que cuando hay discrepancia en cuanto a cuál es el derecho aplicable a la controversia del caso, no procede la imposición de honorarios de abogados. Rivera Renta v. A & C Development Corp., 144 D.P.R. 450 (1997).
En fin, el objetivo de la norma jurídica que permite la imposición de honorarios de abogados por temeridad es “castigar a aquel litigante perdidoso que, por su terquedad, obstinación, frivolidad o insistencia -en actitud desprovista de fundamentos-, obliga a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito.” Departamento de Recreación y Deportes v. Asociación Recreativa Round Hill, Inc., supra, en la pág. 29; Velázquez Ortiz v. Universidad de Puerto Rico, supra (1991); Santos Bermúdez v. Texaco P. R., 123 D.P.R. 351 (1989); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).
En el caso de autos, no hallamos que la parte apelante haya incurrido en temeridad. Se trata de una genuina discrepancia sobre el derecho aplicable a los hechos del caso. Por ende, actuó incorrectamente el foro a quo al imponer honorarios de abogados.
VI
A la luz de toda la normativa expuesta, se modifica la sentencia apelada a los únicos fines de revocar la imposición de costas y honorarios de abogado. Así modificada, la sentencia del Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo, se confirma en todos sus demás aspectos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 49
1. Contrato de Opción, de 10 de Julio de 1998, Apéndice V, escrito de Apelación.
2. Véase, carta dirigida a Ricardo Camacho y firmada por Kathtyn Miskimen Marks y por Evelyn Roldós, con fecha de 20 de febrero de 1999.
3. Véase, “Demanda”, Apéndice IV, del escrito de apelación; “Contestación a la demanda”, Apéndice VI, escrito de apelación; “Moción de Sentencia Sumaria”, Apéndice XIII, escrito de apelación.