*642 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes, señor Enrique A. Becerra y su esposa Ana Mercedes Méndez y la Sociedad Legal de Gananciales compuesta por ambos (esposos Becerra-Méndez) nos solicitan la revocación de la sentencia emitida el 7 de julio de 2000 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la misma, el Tribunal les ordenó la devolución del depósito entregado por la apelada, señora María Berríos Rosario (señora Berríos), para ser acreditados al precio de venta del inmueble propiedad de los apelantes.
Por los fundamentos que expondremos a continuación, confirmamos la sentencia apelada.
I
Surge de autos que el 11 de mayo de 1996, los esposos Becerra-Méndez y la señora Berríos suscribieron un contrato de promesa bilateral de compraventa. Mediante el mismo, los esposos Becerra-Méndez se comprometieron a vender y la señora Berríos se comprometió a comprar la residencia de los primeros ubicada en la Calle 15 Núm. H-6 de la urbanización Jardines de Caparra en Bayamón por el precio de $91,000. Ese mismo día, la señora Berríos entregó a los esposos Becerra-Méndez la cantidad de $3,000 para que fuesen acreditados al precio de venta. El resto del precio de compraventa sería entregado al firmar las escrituras y la señora Berríos esperaba obtenerlo del producto de la venta de un terreno de su propiedad.
Finalmente, la compraventa no se efectuó, por lo que el 16 de octubre de 1997, la señora Berríos presentó demanda sobre incumplimiento contractual y daños y perjuicios contra los esposos Becerra-Méndez. Alegó que los apelantes se negaron a vender la casa por el precio pactado, exigiéndole una cantidad de dinero mayor al acordado, por lo que les solicitó la devolución de los $3,000 entregados en concepto de depósito. Reclamó, además, daños y perjuicios ascendentes a $11,000.
Los esposos Becerra-Méndez contestaron la demanda y presentaron reconvención. En esencia, alegaron que la señora Berríos fue quien incumplió la promesa bilateral de compraventa, toda vez que no perfeccionó la *643 compraventa dentro del término convenido, provocándoles a su vez, la pérdida de $2,000 correspondiente a la opción de compra de un apartamento, más daños y peijuicios que sumaron $25,000. Oportunamente, la señora Berrios replicó.
Celebrado el juicio en su fondo, el tribunal de instancia dictó la sentencia apelada en la que resolvió que los esposos Becerra-Méndez incumplieron el contrato en cuestión, toda vez que no honraron su promesa de vender el inmueble por el precio convenido de $91,000, sino por un nuevo precio de $94,000. En consecuencia, ordenó a los esposos Becerra-Méndez la devolución de los $3,000 entregados por la señora Berrios en calidad de abono al precio de venta. En cuanto a los daños alegadamente sufridos por la señora Berrios, el foro apelado concluyó que no procedían por razón de no haber sido acreditada la existencia de los mismos. Asimismo, desestimó la reconvención de los esposos Becerra-Méndez.
Inconformes, los esposos Becerra-Méndez recurren ante nos e imputan al Tribunal de Instancia la comisión de los siguientes errores:

“Erró el Tribunal Superior al determinar que el demandado-apelante Enrique Becerra había contestado un Interrogatorio deforma inconsistente con su declaración ante el tribunal, lo que no es cierto, y con ello poner en duda su credibilidad de que no sabía que la propiedad a venderse por la demandante no tenía los permisos necesarios de segregación y por tanto se vería ésta impedida de vender la propiedad al señor Luis Rivera Rivera para poder obtener los fondos necesarios para comprar la propiedad de los demandados-apelantes.

Erró el Tribunal Superior al determinar que la demandante-apelada no había comprado la propiedad de los demandados apelantes porque se le solicitara un aumento de tres mil dólares ($3,000) al precio de compraventa por encima de lo pactado por la señora Méndez, demandada-apelante, y determinar erróneamente que la demandada apelante no refutó en su interrogatorio directo lo alegado por el hijo de la demandante-apelada sobre que le habían solicitado ($3,000) dólares al precio de compraventa.

Erró el Tribunal Superior al determinar que el señor Luis Rivera Rivera le había notificado al demandado apelante sobre la ausencia de los permisos de segregación de la finca de los demandados apelantes, mediante la determinación de una llamada telefónica y manteniéndose en contacto con el demandado apelante.

Erró el tribunal al determinar que el término de siete meses no es extraordinariamente largo en un contrato de promesa de compraventa, cuando las partes habían concluido su relación contractual. ”

Examinados los escritos de las partes en unión a la transcripción de la prueba, estamos en posición de resolver.
Por estar estrechamente relacionados, discutiremos conjuntamente todos los señalamientos de error.
II
En vista de que los señalamientos de error plantean esencialmente que el tribunal apelado erró en la apreciación de la prueba presentada durante el juicio, pasamos a discutir a manera de introducción, las normas de abstención judicial respecto a la apreciación de la prueba.
La apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendrán con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. Argüello v. Argüello, 155 D.P.R._, 2001 J.T.S. 127; Trinidad v. Chade, 152 D.P.R._, 2001 J.T.S. 10; Rolón v. Charlie Car Rental, Inc., 148 D. P.R._, 99 J.T.S. 89; Flores v. Soc. de Gananciales, 146 D.P.R._, 98 J.T.S. 96; López Vicil v. I.T.T. Intermedia, Inc., 142 D.P.R. 857 (1997).
*644 La norma descansa en el hecho de que los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia. Argüello v. Argüello, supra; López Vicil v. I.T.T. Intermedia, Inc., supra. Así pues, a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y/o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. Pueblo v. Irizarry Irizarry, 156 D.P.R._, 2002 J.T.S. 68; Pueblo v. Acevedo Estrada, 150 D.P.R._, 2000 J.T.S. 22. En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la pmeba admitida surja que no existe base suficiente que apoye tal determinación. Rolón v. Charlie Car Rental, Inc., supra; López Vicil v. I.T.T. Intermedia, Inc., supra; Pueblo v. Maisonave, 129 D.P.R. 491 (1991).
III
De otra parte, la promesa bilateral de compraventa está expresamente regulada por nuestro Código Civil en su Artículo 1340, 31 L.P.R.A. 3747, que dispone en lo pertinente;
"La promesa de vender o comprar, habiendo conformidad de la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato.

Siempre que no pueda cumplirse la promesa de compra y venta, regirá para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el presente libro."

Este tipo de contrato no crea un derecho real, sino una obligación personal que no confiere título de dominio sobre la propiedad en cuestión. A su vez, la promesa de venta es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización de un contrato de compraventa futura. Soto v. Rivera, 144 D.P.R. 500, 509-510 (1997); Dennis, Metro Invs. v. City Fed. Sav., 121 D.P.R. 197 (1988); Jordán Rojas v. Padró González, 103 D.P.R. 813, 817 (1975).
A través de la promesa de compraventa, las partes sientan las líneas básicas de un contrato y contraen la obligación de desenvolverlas o desarrollarlas, a fin de que aquel último quede en definitiva completo y concluso. El precontrato no es un contrato que promete otro contrato, sino un contrato base, en el cual las partes prometen su actividad dirigida al desenvolvimiento necesario para su conclusión definitiva. Ramón Roca Sastre, Estudios de Derecho Privado, Madrid, Editorial Revista de Derecho Privado, 1948, Vol. I, págs. 324-325.
Así, la promesa de comprar y vender ha sido conceptuada también, por el Tribunal Supremo, como un contrato preparatorio o precontrato, que tiene por objeto la futura celebración de un contrato de compraventa. Soto v. Rivera, supra; Jordán Rojas v. Padró González, supra; Rossy v. Tribunal Superior, 80 D.P.R. 729 (1958).
La promesa de venta bilateral tiene la utilidad o ventaja práctica de conseguir una vinculación inmediata de las partes, cuando por determinada circunstancia no puede llevarse a cabo una compraventa completa y definitiva. Mediante la vinculación inmediata,, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. Por eso es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización de un contrato futuro, o sea, la perfección de la compraventa. Roca Sastre, id., a la pág. 329.
El Artículo 1077 del Código Civil, 31 L.P.R.A. 3052, establece que en todo contrato bilateral recíproco existe una condición resolutoria tácita que, ante el incumplimiento de una de las partes, reconoce el derecho a resolver las obligaciones contraídas. Para que así sea es menester que la obligación incumplida sea esencial o *645 que su cumplimiento constituya el motivo del contrato para la otra parte. Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 348 (1989).
Ante la negativa de una de las partes a cumplir un precontrato, cabe una acción para exigir su cumplimiento específico y no meramente una acción para el resarcimiento de daños y perjuicios. "En principio, siempre que no exista una imposibilidad de hecho, puede exigirse el cumplimiento in natura de la obligación de otorgar un contrato de compraventa. Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública". En ese caso, el tribunal ordenaría el otorgamiento de la correspondiente escritura de compraventa sobre la propiedad en cuestión. De lo contrario, procede la resolución del precontrato con la devolución de las prestaciones y daños y perjuicios, si son probados. Jordán Rojas v. Padró González, supra.
IV
Surge de la transcripción de la prueba que José Guillermo Pérez Berrios, hijo mayor de la apelada, era propietario de una finca de 5 cuerdas ubicada en el Barrio Sud, Sector Tamarindo, Cidra, Puerto Rico, que había adquirido por compra del señor Luis Figueroa. Debido a que la finca todavía no estaba saldada, José Guillermo acordó con don Roberto Vázquez venderle 2 cuerdas de las 5 que formaban la finca con el propósito de reunir el dinero para saldar la finca. Antes de perfeccionarse la referida compraventa, José Guillermo falleció sin descendencia. Por lo tanto, la señora Berrios heredó la finca de 5 cuerdas.
Después de la muerte de su hijo mayor, la señora Berrios decidió honrar el acuerdo de compraventa que José Guillermo había convenido con el señor Roberto Vázquez y también vender el remanente de la finca heredada para así poder mudarse cerca de su otro hijo, el señor Isabelino Pérez Berrios.
En abril de 1996, el señor Luis Rivera Rivera (señor Rivera) y su esposa decidieron comprar el remanente de la finca de doña María. A tal fin, le hicieron entrega de un depósito por la cantidad de $3,000 para que fuera abonado al precio de venta. A la fecha en que se celebró el negocio entre la señora Berrios y el señor Rivera, éste desconocía que la venta se limitaba sólo a 3 cuerdas de la finca. Al advenir en conocimiento de la situación de la finca y del contrato previo con el señor Roberto Vázquez, el señor Rivera decidió continuar con la compra de las 3 cuerdas, pero solicitó que se llevara a cabo todo el trámite requerido para la obtención del permiso y plano de segregación de las 3 cuerdas antes de perfeccionar la compraventa.
De conformidad con el deseo de la señora Berrios de mudarse cerca de su hijo Isabelino, el 11 de mayo de 1996, los apelantes y la apelada otorgaron el anteriormente referido contrato privado de promesa bilateral de compraventa. Mediante el mismo, los esposos Becerra-Méndez se comprometieron a vender a la señora Berrios la residencia de ellos ubicada en la Calle 15 Núm. H-6 de la urbanización Jardines de Caparra en Bayamón. Por su parte, la señora Berrios se comprometió a comprar el inmueble por la suma de $91,000, de los cuales entregó $3,000 en el acto para ser acreditados al precio de compraventa, quedando un balance impagado de $88,000. En el contrato redactado por el señor Isabelino Pérez Berrios y firmado por los litigantes y don Isabelino, nada se dispuso sobre el término para perfeccionar la compraventa de la residencia. Sin embargo, del testimonio de la señora Berrios y de su hijo Isabelino surge que durante las negociaciones, éstos comunicaron a los esposos Becerra-Méndez que la compraventa de la residencia estaba sujeta a la venta de la finca de Cidra. Mientras que el señor Becerra declaró que en esas conversaciones preliminares la señora Berrios y su hijo Isabelino le informaron que ya tenían comprador para la finca, que se llamaba Luis Rivera Rivera y que trabajaba para las Empresas Lausell. Según el testimonio del señor Becerra, la señora Berrios y su hijo le indicaron además que la compraventa de la residencia se otorgaría no más tarde de julio de 1996. Antes de cambiar el cheque de los $3,000, el señor Becerra telefoneó al señor Rivera para corroborar que fuese el comprador de la finca de Cidra.
Así las cosas, el 11 de julio de 1996, los esposos Becerra-Méndez opcionaron para la compra de un *646 apartamento localizado en el complejo residencial Plaza Suchville en Bayamón. Según los términos del contrato, los apelantes entregaron $2,000 para que el inmueble les fuera reservado durante 45 días a partir de la fecha del contrato.
Inmediatamente, el señor Becerra le notificó a don Isabelino sobre la opción que había otorgado y sobre sus términos y condiciones. En respuesta, don Isabelino le comentó sobre el trámite de segregación de la finca ante A.R.P.E. El señor Becerra se ofreció a ayudarle, y así lo hizo, ya que conocía a funcionarios en altas posiciones dentro de la agencia que podrían agilizar el proceso. No empece las gestiones realizadas por el señor Becerra, transcurrieron los 45 días de la opción del apartamento sin que A.R.P.E. aprobara el permiso y los planos de segregación de la finca de Cidra. En consecuencia, los esposos Becerra-Méndez se vieron imposibilitados de ejercer la opción, ya que no habían podido vender la casa cuyo dinero les permitiría liberar la hipoteca de la casa y otorgar una nueva para la compra del apartamento; ello en atención al tipo FHA de las hipotecas en cuestión en las que sólo se permite una hipoteca de este tipo por familia. Debido a ello, los esposos Becerra-Méndez perdieron el depósito de $2,000 entregado al opcionar, más lo invertido para gestiones del financiamiento.
Declaró don Isabelino, que con posterioridad, la señora Ana Mercedes Méndez (esposa del apelante y también apelante) se trasladó a casa de éste para informarle que el precio de venta de la casa había aumentado $3,000 adicionales, es decir, en lugar de venderla por $91,000 ahora el nuevo precio de venta eran $94,000. Luego de este incidente, alega el testigo, no volvió a tener comunicación con los esposos Becerra-Méndez. No obstante, el señor Becerra negó que este incidente hubiese ocurrido.
Finalmente, A.R.P.E. denegó los permisos de segregación de la finca de Cidra por motivo de que la finca principal había sufrido diez segregaciones y la undécima no era permisible. Al enterarse el señor Rivera (potencial comprador de la finca) de lo resuelto por A.R.P.E. y de que el caso sería referido a la Junta de Planes, lo que tardaría entre 6 meses a un año, desistió de comprar la finca. Solicitó la devolución del adelanto de $3,000 que había entregado a la señora Berrios, los cuales le fueron devueltos en octubre de 1996.
Alega el señor Becerra que allá para el 27 de octubre de 1996, visitó a la apelada en la finca de Cidra donde le indicó que ellos no le iban a poder vender porque habían perdido la opción y que en virtud de la decisión de A.R.P.E. ella tampoco les podía comprar la casa, por lo que allí mismo pusieron fin a las negociaciones.
Entretanto, el señor Luis Malavé Zayas (señor Malavé), se interesó en la finca de la apelada. A tal fin, hizo los arreglos pertinente con el señor Roberto Vázquez con quien el difunto José Guillermo Pérez Berrios se había comprometido a venderle dos cuerdas de la finca, y el 20 de noviembre de 1997, el señor Malavé y su esposa compraron a la apelada la totalidad de la finca de 5 cuerdas.
Con los $30,000 que el señor Malavé entregó como adelanto del precio de compraventa de la finca, la apelada compró la casa con el número DD-10 de la Calle 41 de Jardines de Caparra, ya que la apelada había dado por resuelto el contrato para comprar la residencia de los apelantes a raíz del aumento unilateral practicado por los apelantes en el precio original de venta.
El 4 y 18 de diciembre de 1996, el Ledo. José Ramón González Colón, en representación de la señora Berrios, reclamó extrajudicialmente a través de dos cartas dirigidas a los esposos Becerra-Méndez los $3,000 depositados por ella para la compra de la residencia de éstos. A pesar de recibir las cartas, los esposos Becera-Méndez no han devuelto la cantidad reclamada.
De otra parte, en febrero de 1997, los esposos Becerra-Méndez vendieron su residencia a quienes habían sido los suegros de don Isabelino por el precio de $90,000.
*647 V
Como antes mencionamos, los señalamientos de error planteados por los apelantes van dirigidos a cuestionar la apreciación de la prueba testifical que hiciera el foro de instancia. Los apelantes le imputan al tribunal apelado haber errado al descartar la prueba oral que demostró que: (1) la compraventa de la residencia en Jardines de Caparra tenía que ser perfeccionada en o antes del 15 de julio de 1996; (2) al momento de opcionar el apartamento en Plaza Suchville, el apelante desconocía el trámite que se llevaba a cabo ante A.R.P. E. para la segregación de la finca de Cidra; (3) que la esposa del apelante no solicitó a la apelada un aumento en el precio de la compraventa; y (4) que la terminación de la relación contractual entre las partes fue provocada por la imposibilidad de vender la finca de Cidra.
Tras un examen de la transcripción de la prueba oral, tenemos que concluir que los esposos Becerra-Méndez no lograron establecer que el foro de instancia hubiese incurrido en pasión, prejuicio, error manifiesto o parcialidad en la apreciación de la pmeba ante sí. Por el contrario, luego de un análisis detenido de la transcripción de la pmeba, somos del criterio que las determinaciones realizadas por el foro de instancia están ampliamente apoyadas por la pmeba documental y testifical desfilada en la vista en su fondo.
Si bien es cierto que hubo pmeba contradictoria, el foro apelado, como le corresponde, dirimió y aquilató tal pmeba, dando valor probatorio a los testimonios según la credibilidad que le ameritaron los testigos sin incurrir en ninguna de las causas que justifiquen nuestra intervención. No podemos sustituir el criterio del tribunal apelado en relación con la apreciación de la pmeba y la credibilidad que merecen los testigos sin que estén presentes los requisitos jurisprudenciales ya mencionados. Además, un análisis integral de la pmeba no produce insatisfacción o intranquilidad de conciencia con las controvertidas determinaciones de hechos del foro de instancia, de tal magnitud que causen estremecimiento a nuestro sentido básico de justicia.
En el contrato de promesa bilateral de compraventa que nos ocupa, los esposos Becerra-Méndez se comprometieron a vender a la señora Berrios la residencia de ellos por el precio de $91,000. Mientras que la señora Berrios se obligó a comprar la casa de los esposos Becerra-Méndez. A tal fin, entregó un adelanto de $3,000 con la intención de que fuese acreditado al precio de compraventa. Sin embargo, en el ínterin, los esposos Becerra-Méndez aumentaron unilateralmente $3,000 al precio de compraventa previmamente convenido.
Habiéndose rehusado a vender a la señora Berrios la residencia por el precio convenido de $91,000, los esposos Becerra-Méndez incumplieron con una de las obligaciones esenciales del contrato de promesa bilateral de compraventa. Bajo estas circunstancias, la señora Berrios actuó conforme a derecho en la medida en que eligió resolver el contrato entre las partes, lo que en este caso implicaba la devolución de la prestación hecha por la ella, esto es, el reembolso de los $3,000 entregados como depósito.
Concluimos, pues, que la compraventa no se pudo perfeccionar por el incumplimiento de los esposos Becerra-Méndez al exigirle a la señora Berrios una suma adicional de $3,000 para poder otorgar la compraventa negándose así a honrar el precio original de $91,000. Habiendo incumplido los esposos Becerra-Méndez con la obligación de vender, la señora Berrios tiene derecho a que le sean devueltos los $3,000 entregados como depósito para la compra de la residencia de dichos esposos. No se cometieron los errores señalados.
VI
Por los fundamentos anteriormente expuestos, confirmamos la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
*648 ESCOLIO 2003 DTA 8
1. El apartamento sería adquirido con el producto de la venta de su casa a la señora Berrios.