Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAROLINA
PANEL ESPECIAL

| | | |
|---|---|---|
| VENEZIA CLUB HOUSE LLC<br><br>Apelado<br><br>V.<br><br>JORGE JAVIER MARRERO GERENA, ET AL.<br><br>Apelante | KLAN202300678 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2021CV00111<br><br>Sobre: Cumplimiento Específico de Contrato de Opción de Compraventa; Daños Contractuales |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

El 4 de agosto de 2023, compareció ante este Tribunal de Apelaciones, el señor Jorge Javier Marrero Gerena (en adelante, señor Marrero Gerena o parte apelante), por medio de *Apelación*. Mediante esta, nos solicita que revisemos la *Sentencia* emitida el 30 de junio de 2023, y notificada el 5 de julio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por Venezia Club House, LLC (en adelante, VCH o parte apelada) y le ordenó el cumplimiento del contrato intitulado *Option to Purchase Agreement* (en adelante, Contrato de Opción).

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

Número Identificador

SEN2023 _____

**I**

Como cuestión de umbral, es menester señalar que, esta es la segunda ocasión en que las partes comparecen ante este foro revisor dentro del mismo pleito.

En apretada síntesis, el recurso de marras tiene su génesis en una *Demanda* incoada por la parte apelada, el 19 de enero de 2021, en contra del señor Marrero Gerena.[1] En dicha *Demanda*, la parte apelada reclamó el cumplimiento del Contrato de Opción, a través del cual, el señor Marrero Gerena le concedió a VHC una opción de compraventa de una propiedad sita en Carolina, Puerto Rico (en adelante, la Propiedad).

El aludido contrato estipulaba que, el precio para la venta de la Propiedad consistía en la cantidad equivalente al balance de cancelación a la fecha del cierre del primer gravamen hipotecario que afectaba el inmueble a nombre del Banco Popular de Puerto Rico. Entre los términos y condiciones del Contrato de Opción, el término acordado para ejercer la opción de compra vencía el 12 de noviembre de 2020 o quince (15) días laborables después de la liberación del gravamen de segundo rango del Small Business Administration (en adelante, SBA), lo que ocurriese primero. A su vez, la cláusula número 2 del referido contrato, dispone lo siguiente:

> 2. Grant of Option; Closing Date: Subject to the contingencies set forth herein, Seller grants Buyer an option to purchase from the Seller of the Property, in accordance with, and subject to the terms and conditions set forth below.
>
> The option to purchase herein granted by Seller to Buyer shall be valid for forty five (45) days after the execution of this Agreement by both parties ("Term"). Should Buyer exercise his right to purchase the Property, closing of the sale and execution of the Deed of Purchase and Sale shall occur on or before November 12, 2020 or fifteen (15) business days from the date in which Small Business Administration ("SBA") releases the second mortgage lien on the Property, whichever is earlier ("Closing Date").

---

[1] Véase, Apéndice, págs. 1-6.

> Notwithstanding the foregoing, the parties agree that in the event that the SBA does not issue the release of the mortgage lien encumbering the Property on or prior to the Closing Date, the Buyer shall have the right, at its sole option and at no additional cost, (1) to extend the Term and Closing Date indefinite additional forty five (45) days terms, or (2) to opt out of the transaction within two (2) business days of presenting the Seller and Broker its notice to withdraw.

En su *Demanda*, la parte apelada sostuvo que, el término estipulado transcurrió sin que la SBA liberara el gravamen en o antes del 12 de noviembre de 2020 y que por ello, optó por extender el término para ejercer la opción, conforme establece el contrato de opción. Sostuvo que, el señor Marrero Gerena alegadamente se retiró unilateralmente de la transacción durante el término extendido de 45 días, negándose a cumplir con las obligaciones contractuales contraídas con VHC.

Hacemos constar que, el trámite fáctico y procesal del caso fue plasmado en una *Resolución* emitida por este mismo panel, el 15 de febrero de 2023[2], en el recurso con identificación alfanumérica KLCE202300004. En vista de ello, nos limitaremos a esbozar el trámite pertinente a la controversia que aquí nos ocupa.

Conforme surge del expediente, el 22 de noviembre de 2022, la parte apelada presentó ante el foro primario una *Moción de Sentencia Sumaria sobre los Reclamos de la Parte Demandante y la Reconvención de la Parte Demandada*. Por medio de esta, argumentó que el Contrato de Opción fue válidamente perfeccionado por VCH y por el señor Marrero Genera. Añadió que, este proveía un plazo cierto para que VCH ejerciera su derecho de opción, y que, la parte apelante había incumplido con sus obligaciones. De igual forma, propuso treinta y tres (33) hechos que, a su juicio, no se encontraban en controversia. Adujo que, procedía que el foro primario dictara sentencia sumaria a su favor, y que, le ordenara al

---

[2] Por medio de la aludida *Resolución* denegamos la expedición del recurso de *certiorari* presentado por el señor Marrero Gerena.

señor Marrero Gerena el estricto cumplimiento del Contrato de Opción. Lo anterior ya que, surgía de los hechos incontrovertidos que el Contrato de Opción cumplía con los requisitos esenciales dispuestos por nuestro ordenamiento jurídico.

En respuesta, el 1ro de diciembre de 2022, el señor Marrero Genera presentó la *Oposición a Moción de Sentencia Sumaria*. A través de esta, sostuvo que, no procedía que el foro *a quo* dictara sentencia sumaria, puesto que, la parte apelada había incumplido con los requisitos propuestos por la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1, debido a que existían hechos materiales en controversia. Argumentó, además, que el Contrato de Opción era nulo de su faz, por razón de que no establecía un término definido para ejercer la opción.

Luego de varios trámites innecesarios pormenorizar, el 25 de abril de 2023, fue celebrada *la Conferencia sobre el Estado de los Procedimientos*. Según surge de la *Minuta[3]*, el foro sentenciador les concedió a las partes un término de quince (15) días para suplementar sus posiciones en cuanto a las mociones de sentencia sumaria y su oposición, de así interesarles.

Posteriormente, el 10 de mayo de 2023, la parte apelada presentó el *Suplemento a Moción de Sentencia Sumaria sobre los Reclamos de la Parte Demandante y la Reconvención de la Parte Demandada*. En síntesis, reiteró su postura respecto a que el Contrato de Opción era uno válido y vinculante, ya que cumplía con los requisitos del contrato de opción. Aseguró que, el Contrato de Opción le proveía exclusividad a VCH durante el término de duración del derecho de opción. Afirmó que, el señor Marrero Gerena había actuado de mala fe al firmar el Contrato de Opción sin tener la intención de cumplir con el mismo. Reiteró que, el Contrato de

---

[3] Transcrita el 27 de abril de 2023.

Opción contaba con un término específico para ejercer la opción de compraventa. El aludido término constaba de cuarenta y cinco (45) días a partir de la ejecución del Contrato de Opción por ambas partes, que, si VCH decidía ejercer la opción de compraventa, el cierre y la ejecución del contrato de compraventa ocurriría en o antes del 12 de noviembre de 2020, o quince (15) días laborables desde la fecha en que el SBA liberara el segundo gravamen hipotecario que afectaba la Propiedad, lo que ocurriese primero. Arguyó que, conforme a nuestro ordenamiento jurídico, tenía derecho a exigir el cumplimiento específico del contrato. Finalmente, le solicitó al Tribunal de Primera Instancia que declarara con lugar la *Moción de Sentencia Sumaria* y estableciera una fecha de cierre para que las partes procedieran con el contrato de compraventa de la Propiedad, bajo los términos y condiciones establecidos en el Contrato de Opción.

Posteriormente, el 20 de junio de 2023, la parte apelante presentó la *Oposición a Moción Suplementaria de la Parte Demandante.* Mediante esta, arguyó que, la moción suplementaria presentada por VCH demostraba que existía controversia real sobre hechos materiales que prohibían que se dictara sentencia a su favor. Adujo que, el Contrato de Opción incumplía con los requisitos esenciales que requería para que fuera válido.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el Tribunal de Primera Instancia dictó la Sentencia apelada, el 30 de junio de 2023[4], en la cual consignó las siguientes determinaciones de hechos:

1. VCH es una compañía de responsabilidad limitada con fines de lucro, creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico con capacidad para demandar y ser demandado, dedicada a cualquier acto o negocio permitido por ley. Su dirección física y postal es 250 Calle del

---

[4] Notificada el 5 de julio de 2023.

Cristo, San Juan, PR 00918. Su número de teléfono es (917) 340-3400.

2. VCH fue organizada el 4 de junio de 2020.

3. Los señores Brock Pierce ("Sr. Pierce") y Emil Bailey ("Sr. Bailey") son miembros y representantes autorizados de VCH debidamente autorizados para gestionar la compraventa por parte de VCH de la propiedad localizada en Urb. Vistamar Marina Este, B-9 Calle Pontevedra E., Carolina PR 00983 (nuevamente, la "Propiedad").

4. El Sr. Marrero es una persona natural, mayor de edad, soltero y residente de Carolina, Puerto Rico. Su dirección física y postal es Urb. Vistamar Marina Este, B-9 Calle Pontevedra E., Carolina PR 00983.

5. La señora Marixa Álvarez ("Sra. Álvarez") fue contratada por el Sr. Marrero como su corredora de bienes raíces para la compraventa de la Propiedad.

6. La Sra. Álvarez estuvo a cargo de las negociaciones por parte del Sr. Marrero y le comunicó al Sr. Marrero el estatus y desarrollo de las comunicaciones con VCH durante las negociaciones conducentes a la firma del Contrato de Opción.

7. El señor Jorge Juan Ortiz Longo ("Sr. Ortiz") fue contratado por VCH como su corredor de bienes raíces para la compraventa de la Propiedad.

8. La licenciada Yahira Caro [Domínguez] ("Lcda. Caro") fue la abogada que asistió y aconsejó a VCH en las negociaciones con el Sr. Marrero negociación para la opción y compraventa de la Propiedad.

9. El licenciado Carlos R. Carrillo Jiménez ("Lcdo. Carrillo") fue el abogado que, en conjunto con la Lcda. Caro, asistió y aconsejó a VCH en las negociaciones con el Sr. Marrero negociación para la opción y compraventa de la Propiedad.

10. El 1 de junio de 2020, el Sr. Marrero y la Sra. Álvarez intercambiaron varios mensajes de texto mediante los cuales discutieron el precio de la compraventa de la Propiedad.

11. Entre el 29 y 30 de septiembre de 2020, se suscribió el Option to Purchase Agreement (nuevamente, "Contrato de Opción"), entre VCH y el Sr. Marrero.

12. La firma del Contrato de Opción tardó varios meses en ejecutarse, ya que las partes se comunicaron *constantemente* con sus representantes legales para editar el documento, compartir los respectivos borradores y lograr acuerdos de los cuales estuviesen de acuerdo. Las negociaciones para

ejecutar el Contrato de Opción no se dieron a la ligera.

13. El Sr. Marrero entendió y estuvo de acuerdo con las cláusulas del Contrato de Opción luego de cerciorarse del contenido del mismo con su corredora de bienes raíces y su abogado. El Contrato estuvo a su gusto.

14. En el Contrato de Opción, el Sr. Marrero le otorgó a VCH una opción de compraventa, sujeto a los términos y condiciones de dicho contrato, de la Propiedad.

15. La descripción registral de la Propiedad es la siguiente:

"URBANA: Parcela de terreno en la URBANIZACIÓN VISTAMAR MARINA del Barrio Sabana Abajo del término municipal de Carolina, Puerto Rico, que se describe con el solar número 8 del Bloque "B" (8-B) con un área de 2,562.46 metros cuadrados. En lindes por el NORTE, en distancia de cuarenta punto veinticinco metros y cinco punto noventa y dos metros en varias alineaciones con el canal Magdalena; por el SUR, con el solar número siete en una distancia de treinta y cinco punto ochenta y seis metros; por el ESTE, con el Canal principal Amazonas en una distancia de cincuenta y seis punto setenta y siete metros y por el OESTE, con el solar número diez en una distancia de veintiséis punto setenta y cuatro metros y con la calle Pontevedra en varias alineaciones con distancias de diez punto siete metros, cinco punto veintisiete."

"FINCA NÚMERO 26,968, INSCRITA AL FOLIO 37 DEL TOMO 536 DE CAROLINA NORTE, REGISTRO DE LA PROPIEDAD DE CAROLINA, SECCIÓN I."

16. El número de catastro de la Propiedad según el Centro de Recaudación de Ingresos Municipales ("CRIM") es el 042-094-922-22-000.

17. Según el Contrato de Opción, el precio acordado para la venta de la Propiedad es una cantidad equivalente al balance de cancelación a la fecha del cierre del primer gravamen hipotecario que afecta la Propiedad a nombre del Banco Popular de Puerto Rico ("BPPR Payoff").

18. Además del balance de cancelación como precio de compraventa, las partes acordaron que la venta de la Propiedad incluiría las mejoras permanentes, muebles, y enseres detallados en el Exhibit A del Contrato de Opción, y que con la aprobación previa del Small Business Administration (nuevamente, "SBA"), el VCH le pagaría al Sr. Marrero la cantidad de cien mil dólares ($100,000) por dichos artículos.

19. En la cláusula número 2 de los Términos y Condiciones del Contrato de Opción, las partes establecieron que la opción para comprar la Propiedad sería válida por un término de cuarenta y cinco (45) días a partir de la ejecución del Contrato de Opción por ambas partes. Se estableció, además, que de VCH ejercer la opción de compraventa, el cierre y la ejecución del contrato de compraventa ocurriría en o antes del 12 de noviembre de 2020 o quince (15) días laborables desde la fecha en que el SBA libere el segundo gravamen hipotecario que afecta la Propiedad, lo que ocurriese primero.

20. No obstante, la cláusula número 2 del Contrato de Opción establece además que en el evento que la SBA no libere el segundo gravamen hipotecario en o antes de la fecha de cierre, VCH tiene el derecho único de: (1) extender el término y la fecha de cierre por términos adicionales de cuarenta y cinco (45) días, o (2) liberarse de la transacción en cualquier momento sin penalidad y recibir de vuelta el Depósito en un término de dos (2) días laborables luego de notificarle al Sr. Marrero y su corredor de bienes raíces su decisión de liberarse de la transacción.

21. La [cláusula] número 2 de los Términos y Condiciones del Contrato de Opción establece lo siguiente, en el idioma inglés en que está escrito el contrato:

"Grant of Option; Closing Date: Subject to the contingencies set forth herein, Seller grants Buyer an option to purchase from Seller the Property, in accordance with, and subject to the terms and conditions set forth below.

"The option to purchase herein granted by Seller to Buyer shall be valid for forty five (45) days after the execution of this Agreement by both parties ("Term"). Should Buyer exercise his right to purchase the Property, closing of the sale and execution of the Deed of Purchase and Sale shall occur on or before November 12, 2020 or fifteen (15) business days from the date in which Small [Business] Administration ("SBA") releases the second mortgage lien on the Property, whichever is earlier ("Closing Date").

"Notwithstanding the foregoing, the parties agree that in the event that the SBA does not issue the release of the mortgage lien encumbering the Property on or prior to Closing Date, then Buyer shall have the right, at its sole option and at no additional cost, (1) to extend the Term and Closing Date indefinite additional forty five (45) days terms, or (2) to opt out of the transaction at any time without penalty and receive the full return of the Earnest Money Deposit within two

(2) business days of presenting the Seller and Broker its notice to withdraw."

22. Mediante la cláusula 2 del Contrato de Opción, VCH podía unilateralmente extender el término para ejecutar la opción por periodos de 45 días, hasta tanto el SBA liberara el gravamen.

23. Las partes acordaron que la liberación del gravamen por parte del SBA era una condición esencial para la compraventa.

24. La liberación del gravamen por SBA hubiese puesto un fin a las renovaciones de 45 días.

25. El 9 de octubre de 2020, el Sr. Marrero fue arrestado por cargos federales de coerción de menores, atentado de coerción de menores, y pornografía infantil. *Véase* United States of America v. Jorge Javier Marrero Gerena, Criminal Case No. 20-335 (RAM).

26. Mediante la cláusula 21 del Contrato de Opción, las partes acordaron una cláusula de integración que establece:

"This Agreement contains all of the terms, promises, covenants, conditions and representations made or entered into by or between Seller and Buyer and supersedes all prior discussions and agreements, whether written or oral, between Seller and Buyer with all other matters contained herein and constitutes the sole and entire Agreement between Seller and Buyer with respect thereto. This Agreement may not be modified or amended unless such amendment is set forth in writing and executed by both the Seller and Buyer with the formalities thereof."

27. El 14 de octubre de 2020, durante el primer término de cuarenta y cinco (45) días luego de la ejecución del Contrato de Opción, el Sr. Bailey visitó la Propiedad con el ingeniero Felipe Muñoz ("Ing. Muñoz"), para inspeccionar la Propiedad y conversó extensamente con el Sr. Marrero sobre la adquisición de la propiedad, el vecindario y los vecinos. Muñoz.

28. El SBA no liberó el gravamen en o antes del 12 de noviembre de 2020.

29. VCH extendió el término para extender la vigencia del Contrato de Opción, conforme a la cláusula 2 de dicho contrato.

30. La compraventa de la Propiedad entre VCH y el Sr. Marrero no se llevó a cabo.

31. El 17 de diciembre de 2020, el Lcdo. Carrillo recibió un reenvío de un email del Sr. Jorge Ortiz Longo de

un correo electrónico de la Sra. Marixa Álvarez una tabla preparada por el Sr. Marrero el cual [unilateralmente] incluía partidas adicionales no acordadas. Entre ellos un "*fee*" a favor del SBA por dos mil dólares ($2,000.00), honorarios de abogado de trece mil ochocientos cuarenta y nueve con ochenta y seis centavos ($13,849.86) y gastos relacionados al mantenimiento de la propiedad, gastos de agua, luz y asociación de residentes. Así, aumentando, unilateralmente y de mala fe, el precio de venta por encima de los cien mil dólares ($100,000.00) al compararse con el "*Settlement Statement*" de HUD.

32. El 23 de diciembre de 2020, el Sr. Marrero se comunicó con el Lcdo. Carrillo mediante mensaje de texto indicando: "Para mantenerte informado la venta de la casa no va, tis [sic] clientes no contestaron a tiempo y SBA envi[ó] borrador y no se firmara el gravame[n] [sic]". Reclamando también que si no le pagaban cien mil dólares adicionales que no estaban pactados en el Contrato de Opción, se retiraría unilateralmente del cierre de la compraventa.

33. El 23 de julio de 2021, el notario Francine A. Babilonia Vázquez presentó la escritura 38 otorgada en San Juan, Puerto Rico, en el Registro de la Propiedad donde se canceló totalmente la hipoteca a favor del SBA por la suma principal de ochocientos setenta y un mil cien dólares ($871,100.00).

A tenor con tales determinaciones de hechos y con el derecho expuesto en su dictamen, el foro de instancia razonó que el apelante no logró demostrar que el Contrato de Opción era inválido y nulo. Añadió que, de la prueba desfilada, quedó demostrado que fue el señor Marrero Gerena quien incumplió con los términos y las condiciones del Contrato de Opción. En consonancia, el foro *a quo* determinó que el Contrato de Opción era válido y exigible. Finalmente, declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por VCH.

Inconforme con la determinación, el 3 de enero de 2023, el señor Marrero Gerena compareció ante nos mediante recurso de Apelación, alegando los siguientes señalamientos de error:

A. Primer Señalamiento de Error:

Erró en Honorable Tribunal de Primera Instancia al concluir que el contrato de opción de compraventa

objeto del pleito es válido y exigible, aunque de su letra clara y de las propias admisiones de Venezia se desprende, sin lugar a duda, que este incumple con varios de sus requisitos indispensables, convirtiéndolo en uno nulo e ineexistente.

B. Segundo Señalamiento de Error:

Erró el Honorable Tribunal de Primera Instancia al emitir Sentencia Sumaria a pesar de que existen hechos materiales que están en controversia.

C. Tercer Señalamiento de Error:

Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de anulación de la orden de prohibición de enajenación y arrendamiento de la propiedad inmueble objeto del pleito, en contravención de lo establecido por nuestro ordenamiento jurídico y también abusó de su discreción al emitir dicha orden antes de la fecha de vencimiento para que el apelante pudiese presentar su oposición.

D. Cuarto Señalamiento de Error:

Erró el Honorable Tribunal de Primera Instancia al considerar la Sentencia emitida como una final.

El 10 de agosto de 2023, emitimos *Resolución* concediéndole a la parte recurrida hasta el 5 de septiembre de 2023 para que se expresara en torno al recurso de Apelación incoado. Finalmente, el 6 de septiembre de 2023, VCH presentó ante nos su *Alegato en Oposición a "Apelación"*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

**A. Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[5] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *González Meléndez v.*

---

[5] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare Group, LCC.*, 205 DPR 796, 290 (2020).

*Mun. San Juan*, 2023 TSPR 95, 212 DPR ___ (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023) *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015); *Rosado Reyes v. Global Healthcare Group, LCC.,* supra, pág. 290.

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[6] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 5; *Rosado Reyes v. Global Healthcare Group, LCC.,* supra, pág. 290; *González Meléndez v. Mun. San Juan,* supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 6; *Birriel Colón v. Econo y Otros*, supra; *González Meléndez v. Mun. San Juan,* supra.[7] De la prueba adjunta a la solicitud de sentencia sumaria,

---

[6] *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).
[7] Véase *Lugo Montalvo v. Sol Meliá Vacation*, supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3€.

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra.

De conformidad con lo antes indicado, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010). Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos. que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos

esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 679; *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd. Serrano Picón v. Multinational Life Ins.*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 679.

**B. Los Contratos en General**

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones

en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas. Art. 1042 del Código Civil,[8] 31 LPRA ant. sec. 2992; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR 263 (2021). En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez* et al. 210 DPR 163 (2022); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. V. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. 31 LPRA sec. 3372; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín et al. v. Pfizer Pharm.,* supra; *Burgos López et al. v. Condado Plaza,* supra, pág. 8. Los tribunales estamos

---

[8] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron su lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

### C. *El Contrato de Opción de Compra*

El contrato o pacto de opción de compraventa se trata de un contrato que ha sido definido por la jurisprudencia como, "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un periodo de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán del negocio". *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001).  Esencialmente, el contrato de opción de compra es un contrato preparatorio dirigido al eventual otorgamiento de un contrato de compra y venta. El mismo se distingue por los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (de compraventa) sin obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante.[9] No obstante, a pesar de que el contrato de opción se trata de un contrato consensual, la opción de compra es un contrato unilateral, debido a que el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel lo decide.[10]

Ahora bien, sobre la posibilidad de obligarle a transferir su propiedad a otro particular sólo puede hablarse cuando ha habido acuerdo sobre la cosa y el precio. Por otro lado, cuando lo único que

---

[9] *Íd.* a la pág. 722.
[10] *Íd.*

se ha acordado es la venta, sin más, ni siquiera el juicio imparcial de un juez respecto al valor en el mercado del bien en controversia puede sustituir la prerrogativa dominical de fijar el precio y establecer los términos de la enajenación, prerrogativa que, en este sistema, solo le compete al dueño.[11] Por su parte, cabe señalar que:

> En la opción se da un proceso negocial en donde el consentimiento hacia la obligación surge, como en todo contrato, en virtud del intercambio de manifestaciones recepticias. La voluntad se forja a base de un proceso de negociación. No se trata de manifestación unilateral de voluntad, porque las obligaciones que surgen del pacto de opción son el resultado de un proceso de negociación entre el concedente y el optante, proceso que no se da en las obligaciones cuya fuente es la mencionada manifestación unilateral de voluntad.[12]

El contrato de opción de compra tiene que definir la oferta que habrá de mantenerse vigente con todos los elementos de una oferta final y completa del contrato de compraventa. Dicho de otro modo, para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de compraventa que sean de importancia para las partes.[13] Dentro de este marco, "[r]especto al precio de la finca, que es el que importa desde el punto del contenido de la oferta, tiene que tratarse de un precio en metálico, porque se trata de una oferta de venta, no de permuta. Además, aplican aquí los principios de las obligaciones respecto a los requisitos de la prestación, en particular, el de la determinabilidad de la misma. No será necesario que el precio de venta esté exactamente determinado, siempre y cuando su determinación final no requiera un nuevo proceso de negociación.[14] Por otro lado, en lo referente a la promesa bilateral de compraventa, el derogado Código Civil,[15] dispone que es la promesa de vender o

---

[11] Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur. UPR 569 (1984) a la pág. 569.
[12] *Íd.* a la pág. 578.
[13] *Íd.* a la pág. 596.
[14] *Íd.* a la pág. 597.
[15] Hacemos referencia al derogado Código Civil de 1930, por sus disposiciones ser aplicables a la fecha de los hechos.

comprar, habiendo conformidad de la cosa y el precio, y la misma da derecho a los contratantes a reclamar recíprocamente el cumplimiento de la misma. Esto, siempre que no pueda cumplirse la promesa de compra y venta, regirá, para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el Código Civil.[16]

Habidas cuentas, este tipo de contrato preparatorio produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización futura de un contrato de compraventa. *Soto v. Rivera*, 144 DPR 500, 509-510 (1997); *Dennis, Metro Invs. v. City Fed. Sav.,* 121 DPR 197 (1988); *Jordán-Rojas v. Padró-González*, 103 DPR 813, 817 (1975). El contrato de promesa bilateral tiene la ventaja de lograr la vinculación inmediata de las partes cuando por alguna razón no puede otorgarse una compraventa completa y definitiva y que, mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).

Por consiguiente, ante la negativa de una de las partes de cumplir con la promesa bilateral, cabe una acción para exigir su cumplimiento específico y no simplemente una acción para el resarcimiento de perjuicios, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes.[17] Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la

---

[16] Artículo 1340, 31 LPRA sec. 3747.
[17] *Íd.* a la pág. 743. Véase también, *Jordán-Rojas v. Padró-González*, 103 DPR a la pág. 819.

venta previamente convenida y el otorgamiento de la correspondiente escritura pública.[18]

**III**

En el caso de epígrafe, en esencia, nos corresponde evaluar si incidió el foro primario al dictar sentencia sumaria a favor de VCH, puesto que, la parte apelante en su segundo señalamiento de error aduce que, existen hechos materiales en controversia. En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[19].

De un ponderado análisis del expediente ante nuestra consideración, surge que, tanto la parte apelada en su moción de sentencia sumaria, como la parte apelante en su oposición, cumplieron sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Puesto que, la parte apelada incluyó las alegaciones de las partes, realizó una enumeración de hechos sobre los cuales entendía incontrovertidos, de manera detallada, separada y sustentada. De igual forma, VCH hizo referencia a declaraciones juradas y otros documentos que obran en

---

[18] *Íd.*
[19] *Roldán Flores v. M. Cuebas, Inc.,* supra, pág. 679.

el expediente. En cuanto a la oposición presentada por la parte apelante, esta hizo referencia a la prueba que entendía que controvertía los hechos alegados por la parte contraria, e indicó los párrafos y las páginas a las que hacía referencia. [20]

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el foro primario y las acogemos, por no estar en controversia y estar basadas en evidencia suficiente. Además, determinamos que no existen controversias adicionales.

Superada esta primera etapa, ahora nos corresponde determinar si el foro de primera instancia aplicó correctamente el Derecho a la controversia de epígrafe.

En su primer señalamiento de error, la parte apelante sostiene que, el foro *a quo* incidió al determinar que el Contrato de Opción es válido y exigible, a pesar de que, a su juicio, este incumple con varios de los requisitos indispensables y por ende, se convirtió en nulo e inexistente. Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, las partes de epígrafe suscribieron el Contrato de Opción, donde la parte apelante le otorgó a VCH una opción de compraventa, sujeto a los términos y condiciones de dicho contrato, sobre la Propiedad. De acuerdo con el aludido contrato, el precio acordado para la venta de la Propiedad sería la cantidad equivalente al balance de cancelación a la fecha del cierre del primer gravamen hipotecario que, en ese entonces, afectaba la Propiedad, a nombre del BPPR. De igual forma, la cláusula número 2 de los Términos y Condiciones del Contrato de Opción, dispone que, la opción para comprar la Propiedad sería válida por un término de cuarenta y cinco (45) días a partir de la ejecución del Contrato de

---

[20] Regla 36.3(b) de Procedimiento Civil, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 15.

opción por ambas partes. Asimismo, dispone que, de VCH ejercer la opción de compraventa, el cierre y la ejecución del contrato de compraventa ocurriría en o antes del 12 de noviembre de 2020 o quince (15) días laborables desde la fecha en que el SBA liberara el segundo gravamen hipotecario que afectaba la Propiedad, lo que ocurriese primero. Por otro lado, la misma cláusula establece que, en la eventualidad de que la SBA no liberara el segundo gravamen hipotecario en o antes de la fecha de cierre, VCH tenía el derecho único de: 1) extender el término y la fecha de cierre por términos adicionales de cuarenta y cinco días, o 2) liberarse de la transacción en cualquier momento sin penalidad y recibir de vuelta el Depósito en un término de 2 días laborables, luego de notificarle al señor Marrero Gerena y su corredor de bienes raíces sobre su decisión.

La cláusula número 2 del referido contrato, lee como sigue:

2. Grant of Option; Closing Date: Subject to the contingencies set forth herein, Seller grants Buyer an option to purchase from the Seller of the Property, in accordance with, and subject to the terms and conditions set forth below.

The option to purchase herein granted by Seller to Buyer shall be valid for forty five (45) days after the execution of this Agreement by both parties ("Term"). Should Buyer exercise his right to purchase the Property, closing of the sale and execution of the Deed of Purchase and Sale shall occur on or before November 12, 2020 or fifteen (15) business days from the date in which Small Business Administration ("SBA") releases the second mortgage lien on the Property, whichever is earlier ("Closing Date").

Notwithstanding the foregoing, the parties agree that in the event that the SBA does not issue the release of the mortgage lien encumbering the Property on or prior to the Closing Date, the Buyer shall have the right, at its sole option and at no additional cost, (1) to extend the Term and Closing Date indefinite additional forty five (45) days terms, or (2) to opt out of the transaction within two (2) business days of presenting the Seller and Broker its notice to withdraw.

Conforme al derecho expuesto, el contrato de opción de compraventa es un contrato consensual mediante el cual una parte (prominente) le concede a la otra (optante) el derecho exclusivo a

decidir de forma unilateral si comprará determinado bien inmueble que le pertenece al prominente.  Tal facultad deberá ejercitarse dentro de un periodo de tiempo definido por las partes, las cuales se beneficiarán del negocio.[21]  Este tipo de contrato debe contener los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (de compraventa) sin obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante.[22]  No obstante, a pesar de que el contrato de opción se trata de un contrato consensual, la opción de compra es un contrato unilateral, debido a que el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel lo decide.[23]

Al examinar el Contrato de Opción suscrito por las partes, concluimos que este es uno válido y exigible, puesto que cumple con los requisitos esenciales de un contrato de opción.  Veamos.  En primer lugar, el señor Marrero Gerena (prominente) le concedió a VCH (optante) la facultad de decidir unilateralmente si celebrará la compraventa de la Propiedad, ello sin la obligación de celebrarla, en la medida que estableció *"[s]ubject to the contingencies set forth herein, Seller grants Buyer an option to purchase from the Seller of the Property* […]".  En segundo lugar, la concesión de la opción tiene carácter de exclusividad, ya que, le provee exclusividad a VCH al establecer, en su séptima cláusula, lo siguiente:

> Exclusive Dealing; Good Faith Negotiation: During the Term of this Agreement, Seller shall not accept or enter into an option agreement for the Property from any third party, nor Seller shall have the right to continue to market, show and entertain offers for the sale of the Property from any third party.

---

[21] *SLG Irizarry v. SLG García*, supra, pág. 722.
[22] *Íd.*
[23] *Íd.*

En tercer lugar, establece un plazo para ejercitar la opción, al disponer un término de cuarenta y cinco (45) días a partir de la ejecución del Contrato de Opción por las partes. En el caso en que, VCH decidiera ejercer la opción de compraventa, tal como surge del Contrato de Opción, el cierre y la ejecución del contrato de compraventa debía ocurrir en o antes del 12 de noviembre de 2020 o quince (15) días laborables desde la fecha en que el SBA liberara el segundo gravamen hipotecario que afectaba la Propiedad, lo que ocurriese primero. En el caso en que el señor Marrero Gerena no pudiera gestionar la cancelación del aludido gravamen, entonces, VCH estaba facultada para prorrogar el término dispuesto por cuarenta y cinco días (45) o liberarse de la transacción en cualquier momento. Como bien expone la parte apelada, el término dispuesto para que VHC ejerciera su derecho de opción concluía cuando el SBA liberara el gravamen. Es decir, las partes acortaron un plazo para ejercer la opción. Finalmente, queda claro que no existe otra condición para celebrar la compraventa que no fuese la voluntad de VCH.

Luego de revisar la evidencia que tuvo el foro sentenciador ante su consideración, y examinar los planteamientos esgrimidos por la parte apelante al cuestionar las determinaciones de hechos alcanzadas por este en su *Sentencia,* concluimos que, tal cuestionamiento no se encuentra apoyado en la evidencia que emana del expediente. La parte apelante no presentó prueba convincente ni que lograra controvertir las determinaciones de hechos acogidas por este foro.

Es por lo que, luego de un ponderado análisis, colegimos que, ante la inexistencia de hechos en controversia, y ante la aplicación correcta del Derecho, contrario a lo esgrimido por el señor Marrero Gerena en su primer, segundo y cuarto señalamiento de error, procedía que el foro primario emitiera una sentencia sumaria final.

En su tercer señalamiento de error, la parte apelante sostiene que la primera instancia judicial incidió al declarar No Ha Lugar la solicitud de anulación de la orden de prohibición de enajenación y arrendamiento de la propiedad inmueble objeto del pleito, en contravención de lo establecido por nuestro ordenamiento jurídico. Arguyó, además que, el foro *a quo* abusó de su discreción al emitir dicha orden antes de la fecha de vencimiento para que la parte apelante pudiera presentar su oposición.

Si bien es cierto que el foro de primera instancia debió concederle a la parte apelante un término para que pudiese exponer su oposición, aun así, esta tuvo la oportunidad de presentar su posición al respecto en su *Moción en Solicitud de Anulación de Orden Ex Parte de Prohibición de Enajenación de Inmueble y Anotación en el Registro de la Propiedad.* Consecuentemente, al no mediar pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con la facultad discrecional del foro primario respecto sobre tal asunto[24].

**IV**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[24] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).