ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| JAVIER ROMÁN ROSA<br><br>Recurrida<br><br>v.<br><br>ARMANDO CABÁN SOTO, FERNANDO CABÁN SOTO Y LUIS MANUEL CABÁN SOTO Y DOÑA SILVIA SOTO LÓPEZ; FULANO DE TAL; SUTANO DE TAL; MENGANO DE TAL<br><br>Peticionario | TA2025CE00895 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2025CV01391<br><br>Sobre: Incumplimiento de Contrato; Cumplimiento Especifico, Daños y Consignación de Fondos |

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de enero de 2026.

Comparecen ante nos, Armando Cabán Soto, Fernando Cabán Soto y Silvia Soto López (en conjunto, "Peticionarios") mediante *Certiorari*, y nos solicitan que revisemos una *Resolución* emitida el 5 de diciembre de 2025, notificada el mismo día, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla ("TPI"). En virtud del referido dictamen, el TPI denegó las mociones de desestimación presentadas por los Peticionarios, al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2 y aceptó la consignación de fondos ofrecida por Javier Román Rosa ("Recurrido").

Por los fundamentos que expondremos a continuación, se *expide* el recurso de *certiorari* y se *confirma* el dictamen recurrido.

**I.**

El 13 de agosto de 2025, el señor Román Rosa instó una *Demanda* sobre incumplimiento de contrato y daños y perjuicios en contra de los señores Armando, Fernando y Juan,[1] todos de apellido Cabán Soto, y de la señora Silvia

---

[1] A través de todo el pleito, el señor Juan Manuel Cabán Soto es identificado también como Luis Manuel Cabán Soto.

Soto López. También, se incluyó en la demanda a aquella persona o entidad de nombre desconocido que haya intentado interferir en el negocio jurídico en cuestión y/o haya adquirido o pueda ser poseedor o tener otro derecho sobre cualesquiera de las propiedades objeto del presente litigio. En esencia, el señor Román Rosa alegó que el 16 de abril de 2021 suscribió con los demandados un contrato titulado "Promesa Bilateral de Compraventa". Adujo que los demandados se comprometieron a venderle cuatro predios ubicados en el pueblo de Aguadilla, Puerto Rico. Manifestó que dado que dichas propiedades no se encuentran inscritas en el Registro de la Propiedad ni en el Centro de Recaudaciones de Ingresos Municipales (CRIM), "como condición previa al otorgamiento de las escrituras de compraventa correspondientes [...], en la Compraventa los demandados acordaron y se obligaron a inscribir[las] a su nombre [...]".[2] De igual forma, sostuvo que los demandados se obligaron a realizar todas las gestiones necesarias para efectuar ambas inscripciones y que, de no cumplir con ello, se le permitiría realizarlas por su cuenta, con el derecho de descontar cualquier gasto en que incurriera. Indicó que contrató los servicios de un agrimensor quien, en o alrededor del año 2022, realizó la mensura de los predios la cual fue entregada a los demandados.

Explicó que ante la falta de resultados por parte de los demandados, él indagó en múltiples ocasiones sobre el estado y el desarrollo de los trámites pendientes. Insistió en que tanto los demandados como la representación legal de estos le informaban que los trámites de inscripción estaban en progreso. Señaló que como parte de dichos procesos los señores Cabán Soto y la señora Soto López radicaron una demanda sobre sentencia declaratoria y expediente de dominio identificada bajo el alfanumérico AG2024CV02132 de la cual posteriormente desistieron sin perjuicio. Adujo que mediante la precitada demanda, se buscó restablecer el tracto de los terrenos y sostener que estos fueron vendidos a un tercero, a saber, la Corporación Vista Rompeolas LLC. En esta línea, sostuvo que en ningún momento posterior a la presentación de la

---

[2] *Véase*, Apéndice del Recurso, Entrada Núm. 1.

moción de desistimiento, le informaron sobre los avances y resultados obtenidos en la tramitación de la inscripción de las propiedades.

En resumen, el señor Román Rosa alegó que el 4 de agosto de 2025 los demandados, mediante misiva, dieron por terminada la "Compraventa" aduciendo que no había sido posible completar el proceso de expediente de dominio necesario para otorgar la escritura de compraventa. Por tal razón, planteó que tanto la omisión de inscribir los predios como la falta de notificarle la alegada imposibilidad de inscripción constituyen un incumplimiento contractual. Alegó que en la carta del 4 de agosto de 2025 se le concedió diez (10) días para que pagara los $85,000.00 restantes del precio de las propiedades.[3] Por ello, consignó ante el tribunal la suma de $90,000.00,[4] correspondiente a lo pactado en el contrato por los predios. Entre otros asuntos, solicitó el cumplimiento específico del contrato y el pago de daños y perjuicios por una cantidad no menor a $50,000.00.

El 19 de agosto de 2025 el foro primario emitió una *Orden* mediante la cual declaró "No Ha Lugar en este momento" a la *Moción de Consignación* presentada por el señor Román Rosa el 13 de agosto de 2025. En reacción, el 3 de septiembre de 2025 el señor Román Rosa instó una *Moción de Reconsideración.*

Posteriormente, el 5 de septiembre de 2025, los señores Armando Cabán Soto y Fernando Cabán Soto, junto con la señora Soto López, presentaron una *Moción en Solicitud de Desestimación al Amparo de la Regla 10.2 de PC.* En síntesis, alegaron que el contrato titulado "Promesa Bilateral de Compraventa" es un contrato de opción cuyo término era hasta el 16 de abril de 2022, con una extensión hasta el 16 de abril de 2023, a la entera discreción de la parte vendedora.[5] Afirmaron que, conforme a lo pactado, en caso de incumplimiento por parte de los vendedores, estos quedarían obligados a devolver al comprador el depósito de $5,000.00 sin intereses y se sujeta a los daños probados

---

[3] *Íd.*
[4] *Véase*, Apéndice del Recurso, Entrada Núm. 2.
[5] *Véase*, Apéndice del Recurso, Entrada Núm. 22.

judicialmente. Argumentaron que ellos ejercieron su debida diligencia para resolver los problemas de tracto de las propiedades, sin embargo, todos sus esfuerzos resultaron infructuosos.

En esencia, sostuvieron que se incluyó en el referido contrato un plazo de un (1) año para su ejecución –el cual había expirado–, así como una condición suspensiva. Alegaron que se pactó que, para otorgar eficacia a los acuerdos, era necesario llevar a cabo el proceso de inscripción de las propiedades en el Registro de la Propiedad, así como en el CRIM. Manifestaron que para la fecha de la radicación de la *Demanda*, habían transcurrido en exceso tres años y varios meses del vencimiento del plazo pactado en el contrato, por lo que el señor Román Rosa no tiene derecho a exigir el cumplimiento específico del mismo. Adujeron que el Tribunal está impedido de concederle un remedio al señor Román Rosa al haber prescrito su derecho a ejercer su reclamación de daños.

Así las cosas, el 10 de septiembre de 2025, los señores Armando Cabán Soto y Fernando Cabán Soto, junto a la señora Soto López, presentaron una *Moción en Oposición a Consignación y en Cumplimiento de Orden*. Explicaron que para el 4 de agosto de 2025 como "última oportunidad al Demandante para concretar el acuerdo, le envían un mensaje por 'Whatsapp' solicitando el pago del balance de $85,000.00, según alegado en la demanda" y que ante la negativa del señor Román Rosa para efectuar el mismo, le cursaron una carta "informando que no proceder[ían] con la venta dado que había expirado el término".[6] Alegaron que el 6 de agosto de 2025 le enviaron al señor Román Rosa una carta informando las gestiones realizadas y la imposibilidad de resolver la situación de las inscripciones, como también se le incluyó un cheque por la suma de $5,000.00. En resumen, manifestaron que el señor Román Rosa incumplió con los formalismos requeridos por el Código Civil de Puerto Rico para la consignación de fondos al no haber realizado un ofrecimiento de pago al acreedor.

---

[6] *Véase*, Apéndice del Recurso, Entrada Núm. 28.

El 10 de septiembre de 2025 el señor Juan Cabán Soto presentó una *Moción en Solicitud de Desestimación*. En síntesis, alegó que el señor Román Rosa nunca ejerció el derecho de opción y que tampoco realizó gestiones para culminar el proceso de inscripción en el Registro de la Propiedad y el CRIM. En respuesta, el 29 de septiembre de 2025 el señor Román Rosa presentó su *Oposición a Mociones de Desestimación*.

Luego de varios trámites procesales, el 5 de diciembre de 2025 el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* las mociones de desestimación y aceptó la consignación presentada por el señor Román Rosa.

Inconformes, el 13 de diciembre de 2025, los señores Armando Cabán Soto y Fernando Cabán Soto, junto con la señora Soto López, acudieron ante esta Curia mediante recurso de *Certiorari*. En esencia, los Peticionarios le imputaron al TPI la comisión de los siguientes errores:

> **Err[ó] el Tribunal de Primera Instancia al no determinar [que] el demandante no tiene causa de acción para exigir cumplimiento específico por haber expirado desde 16 de abril de dos mil veintitrés su derecho a solicitarlo y por no haberse cumplido la condición suspensiva que contenía el contrato.**
>
> **Err[ó] el TPI al Reconsiderar su determinación de "No ha lugar en este momento" a la solicitud de consignación del Demandante, y posteriormente aceptar la misma, aun cuando las circunstancias no variaron y la referida consignación no cumple con los requisitos del Código Civil.**
>
> **Err[ó] el Tribunal de Primera Instancia al no desestimar la reclamación de daños del demandante por estar prescrita por haber expirado desde 16 de abril de dos mil veintitrés.**

El 22 de diciembre de 2025 el señor Román Rosa presentó su *Alegato en Oposición a Certiorari*. En resumidas cuentas, alegó que el negocio jurídico en cuestión es un contrato de compraventa perfeccionado y no un contrato de opción de compraventa por lo que ambas partes estaban obligadas a cumplir con las prestaciones convenidas. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. Certiorari

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia,

se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari*, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para analizar el problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012) (citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986)). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**B. Moción de desestimación**

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company,* 214 DPR 1007, 1020 (2024); *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que

crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba". *Rivera Candela v. Universal Insurance Company, supra* (citando a J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92). Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569-570 (2001).

En lo pertinente, la Regla 10.2 de Procedimiento Civil, *supra*, permite a una parte que es demandada, mediante la presentación de una moción debidamente fundamentada a esos fines, solicitar la desestimación de la demanda instada en su contra. La referida regla establece que la parte demandada podrá solicitar la desestimación de la demanda por alguno de los siguientes fundamentos:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;
(6) dejar de acumular una parte indispensable. *Íd.* (Énfasis suplido)

Nuestro máximo foro ha resuelto que para que proceda una moción bajo el fundamento de que se deja de exponer una reclamación que justifique un remedio, "tiene que demostrarse de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiese probar en apoyo a su reclamación". *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR __ (2025); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012).

En estos casos, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023).

Particularmente le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida". *Íd.* Ello evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 534 (2024) (citando a R. Hernández Colón, *Derecho Procesal Civil,* 6ta ed., San Juan, LexisNexis, 2017, pág. 307).

Conviene señalar que, el Tribunal Supremo de Puerto Rico en *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 397 (2022), discute el examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

> [A]l interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *Comisión v. González Freyre et al.,* 211 DPR 579, 615 (2023). Si luego comprende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534 (citando a R. Hernández Colón, *Derecho Procesal Civil, supra,* pág. 307). En cambio, si concluye que las alegaciones cumplen con el estándar de suficiencia le corresponde denegar la petición de desestimación.

### C. Los contratos y su interpretación

En nuestro ordenamiento jurídico las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos ilícitos y de cualquier otra acción u

omisión en el cual medie culpa o negligencia. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 994 (2024). Por ello, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y terceros. 31 LPRA sec. 9754. Asimismo, las partes pueden acordar cualquier cláusula contractual, siempre que no sea contraria a la ley, a la moral o al orden público. 31 LPRA sec. 9753. Así pues, el principio de libertad de contratación reconoce la autonomía de la voluntad de los contratantes. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 33 (2010); *De Jesús González v. A.C.,* 148 DPR 255, 263 (1999).

En tal sentido, el contrato es el negocio jurídico bilateral mediante el cual dos o más partes expresan su consentimiento, conforme a las formas establecidas por la ley, con el propósito de crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751. Siendo ello así, éste se perfecciona en el momento en que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. 31 LPRA sec. 9771. Por ende, el contrato debe haberse formado libre, consciente y deliberadamente. *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 62 (2011) (citando a J.M. Lete del Río y J. Lete Achirica, *Derecho de Obligaciones,* Navarra, Ed. Thomson/Aranzadi, 2005, Vol. 1., págs. 430-431).

El Tribunal Supremo ha reiterado que los contratos no están sujetos a interpretación cuando sus términos son claros y específicos y ha de hacerse de manera integral y no aisladamente, de manera que se busque su verdadero sentido, atendiendo a la interpretación de unas cláusulas con relación a otras. *Asoc. Res. Los Versalles v. Los Versailles,* 194 DPR 258, 267 (2015). Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *C.F.S.E. v. Unión de Médicos,* 170 DPR 443, 450 (2007) (citando a *Sucn. Ramírez v. Tribl. Superior,*

81 DPR 357 (1959)). Cónsono con lo anterior, el Artículo 354 del Código Civil, *supra*, establece que:

> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
> Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico. 31 LPRA sec. 6342.

Así, la intención de los contratantes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. Por tal razón, la interpretación contractual se circunscribe en determinar cuál fue la intención real y común de las partes. Para ello, los tribunales han adoptado una metodología pragmática, la cual consiste en estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato. 31 LPRA sec. 6342; *Aut. Puertos PR v. Total Petroleum et al.*, 210 DPR 16 (2022). Esto incluye otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes y el acuerdo que intentaron llevar a cabo. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 34-35 (2010). Además, cuando el negocio jurídico es oneroso, la interpretación será a favor de la mayor proporcionalidad de intereses. 31 LPRA sec. 6346. Las cláusulas de un negocio bilateral serán interpretadas de manera desfavorable a quien las redactó y a favor de quien tuvo menor poder de negociación. *Íd.*

### D. Compraventa

Entre los contratos que regulan nuestro Código Civil, se encuentra el contrato de compraventa. Este tipo de contrato es uno bilateral que crea obligaciones recíprocas. *Martínez v. Colón Franco, Concepción*, 125 DPR 15, 32 (1989). El Artículo 1274 del Código Civil, *supra*, lo define como el contrato mediante el cual "la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagarle un precio cierto". 31 LPRA 9941; *Segarra Rivera v. Int'l. Shipping et. al.*, 208 DPR 964, 993 (2022). Toda persona con capacidad para consentir puede convenir la compraventa. 31 LPRA sec. 9951. El contrato de compraventa no exige formalidad especial alguna para su validez, salvo cuando la ley especial así lo requiera. 31 LPRA sec. 9981.

### E. Opción de Compra

El Artículo 1029 del Código Civil, *supra*, dispone que la opción de compra es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado. 31 LPRA sec. 8821. En este sentido, se trata de un negocio consensual preparatorio, mediante el cual una parte le concede a otra parte, por un plazo cierto y en determinadas condiciones, la facultad de decidir respecto a la celebración de otro contrato principal. *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 724 (2008). De ahí que, los requisitos del título de constitución son:

> (a) el plazo de duración del derecho y, si procede, el plazo para su ejercicio;
> (b) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real;
> (c) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y
> (d) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido. 31 LPRA sec. 8822.

Consecuentemente, los contratos de opción de compra se pueden inscribir cuando cumplan con los requisitos anteriores y consten en escritura pública. *Íd.* En específico, el Artículo 1032 del Código Civil, *supra*, dispone que el ejercicio del derecho de opción a la adquisición onerosa requiere el pago previo o simultáneo del precio fijado, determinado según los criterios establecidos, o el que resulta de la aplicación de las cláusulas de estabilización, si se han previsto. 31 LPRA sec. 8824. "El contrato de opción le puede conceder al optante la posibilidad de decidir unilateralmente si perfecciona una compraventa, cuyos contornos se han detallado en el contrato de opción". *P.D.C.M. Assoc. v. Najul Báez, supra*, pág. 724. En virtud de este, el concedente tiene la obligación de no frustrar el derecho que goza el optante. *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 250 (2002).

Tómese en cuenta que, el derecho de opción se extingue mediante su ejercicio positivo, quedando así perfeccionado el contrato aceptado. *Íd.*, pág. 240. De igual manera, se extingue si se deja transcurrir el plazo concedido para optar sin hacer manifestación alguna, o haciendo una que tenga el efecto de renunciar al derecho. *Íd.* Por esta razón, el plazo para el ejercicio de la opción es de caducidad. *Íd.* Es decir, el derecho del optante de declarar su voluntad de perfeccionar el contrato por el cual se opta, caduca si ésta no es notificada al concedente durante la vigencia del plazo de la opción, de este haberse fijado. *Íd.*

### F. Contrato Preliminar

La Exposición de Motivos del Código Civil de Puerto Rico, *supra*, expone que "[s]e regula la figura del contrato preliminar, también conocido como contrato preparatorio, precontrato o promesa de contrato. [...]. Las partes quedan obligadas por la buena fe a colaborar, proporcionar información relevante, mantener la confidencialidad y conservar el bien". En particular, el Artículo 1235 del Código Civil, *supra*, define el contrato preliminar como aquel mediante el cual las partes se obligan a celebrar un contrato futuro. 31 LPRA sec. 9756. A tales efectos, un contrato preliminar se denomina Opción si le atribuye a una sola de las partes la facultad de decidir sobre la celebración del contrato futuro. *Íd.* Ahora bien, el contrato preliminar no está sujeto al cumplimiento de las formalidades que debe satisfacer el contrato futuro. *Íd.* Además, el tribunal puede exigirle su estricto cumplimiento, cuando la parte requerida se niega al otorgamiento del nuevo contrato. *Íd.*

La promesa de venta es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que sólo tienen por objeto la realización de un contrato de compraventa futura. *Soto v. Rivera,* 144 DPR 500, 509-510 (1997); *Jordán-Rojas v. Padró González,* 103 DPR 813, 817 (1975). Nuestro máximo foro ha expresado que este tipo de contrato no crea un derecho real sino una obligación personal que no confiere título de dominio sobre la propiedad en cuestión. *Íd.* "La promesa de venta bilateral tiene la utilidad o ventaja práctica de conseguir una vinculación inmediata de las partes, cuando por determinada circunstancia no puede llevarse a cabo una compraventa completa y definitiva.

Mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde". *Rossy v. Tribunal Superior*, 80 DPR 729, 741-742 (1958). Por ello, "[s]i la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública". *Íd.*

### III.

En el recurso que nos ocupa, los señores Cabán Soto y la señora Soto López nos solicitaron que revoquemos la *Resolución* del TPI mediante la cual se declaró *No Ha Lugar* la solicitud de desestimación instada por estos y aceptó la consignación de fondos realizada por el señor Román Rosa. En esencia, los Peticionarios argumentaron que incidió el foro primario al no determinar que el señor Román Rosa no tiene causa de acción para exigir el cumplimiento específico del contrato por haber expirado su derecho a solicitarlo desde el 16 de abril de 2023 y por no haberse cumplido la condición suspensiva de inscripción de las propiedades en el Registro de la Propiedad ni en el CRIM. A su vez, adujeron que erró el foro *a quo* al aceptar la consignación de fondos toda vez que la misma no cumple con los requisitos del Código Civil de Puerto Rico. Por último, manifestaron que erró el TPI al no desestimar la reclamación de daños por estar prescrita. Veamos.

Por estar íntimamente relacionados el primer y el tercer error señalados, procedemos a discutirlos en conjunto. Tal como indicamos previamente, el 16 de abril de 2021 el señor Román Rosa y los Peticionarios suscribieron un contrato intitulado Promesa Bilateral de Compraventa. Posteriormente, el 13 de agosto de 2025, el señor Román Rosa presentó una *Demanda* por incumplimiento de contratos y daños y perjuicios. Afirmó que los demandados incumplieron con su obligación de inscribir las propiedades y que vulneraron su derecho de gestionar por su cuenta la inscripción correspondiente. Sostuvo que el contrato convenido es una Compraventa. En cambio, los Peticionarios plantearon que la Promesa Bilateral de Compraventa es un contrato de Opción de Compraventa y que el

señor Román Rosa no realizó acciones afirmativas para reclamar su derecho en el tiempo pactado. A continuación, se precisan algunos aspectos del contrato mencionado. Dispone:

SEGUNDO: Que los comparecientes tienen convenido la compraventa de la propiedad descrita en el expositivo PRIMERO de este contrato y **lo llevan a efecto en este acto** bajo las siguientes:
----------------------------cláusulas y condiciones------------------------
**Una**: La parte vendedora se obliga a vender a los compradores y estos a su vez se obligan a comprar de la parte vendedora la propiedad descrita en el expositivo PRIMERO de este contrato.
**Dos**: El precio de compraventa convenido es de NOVENTA MIL DÓLARES ($90,000.00) cuya suma la parte compradora pagará a la parte vendedora de la siguiente manera:
(a) CINCO MIL DÓLARES ($5,000.00), que la parte vendedora manifiesta haber recibido de manos de la parte compradora en el día de hoy y con anterioridad a este acto, siendo el estado civil de los comparecientes el actual, por cuya cantidad la parte vendedora otorgó a la parte compradora la más formal y eficaz carta de pago.
(b) y el remanente de OCHENTA Y CINCO MIL DÓLARES ($85,000.00) que la parte compradora los pagará en su totalidad a la parte vendedora **en la fecha de otorgamiento de la <u>escritura pública de compraventa</u>**.
**Tres**: El término de esta **opción** será de un (1) año, hasta el día dieciséis (16) de abril del año dos mil veintidós (2022). **La <u>escritura pública de compraventa se otorgará</u> dentro del término de esta opción.**
---Una vez transcurrido el término de un año (1) y de no haberse culminado el proceso de inscripción en el Registro de la Propiedad y el CRIM de las propiedades objeto de este contrato, la parte vendedora podrá a su entera discreción extender el término del presente contrato por un año adicional, es decir hasta el día 16 de abril del año dos mil veintitrés (2023).
[...]
**Seis**: La parte vendedora se compromete a **entregar a la parte compradora un título inscribible** y sin cargas ni gravámenes.
[...]
**Nueve**: Las partes comparecientes vienen obligadas a ser diligentes en la tramitación de las gestiones que vienen obligadas por este contrato.
[...]
**Once**: Las partes convienen y estipulan que serán de cuenta y cargo de la parte vendedora los gastos y gestiones necesarias para inscribir a su favor las propiedades objeto del presente contrato en el Registro de la Propiedad y en los registros del Centro de Recaudaciones Municipales (CRIM). La parte vendedora hace constar que contratará los servicios de un abogado y un agrimensor para que realicen los trámites necesarios ante los Tribunales y/o agencias administrativas para lograr la inscripción de las propiedades antes descritas en el Registro de la Propiedad y el CRIM.
--En caso de que la parte vendedora no pueda inscribir en el Registro de la Propiedad y el CRIM las propiedades objeto del presente contrato, la parte compradora podrá a su opción realizar las referidas gestiones y trámites y **le descontará el precio de compraventa los gastos y costos relacionados para que se lleven a cabo los trámites para la inscripción** de las propiedades en el Registro de la Propiedad y el CRIM.
**Doce**: En caso de incumplimiento por la parte compradora, la parte vendedora retendrá para sí la suma de CINCO MIL DÓLARES

($5,000.00) del dinero depositado como daños liquidados. En caso de incumplimiento por parte de la parte vendedora, ésta viene obligada a devolver a la parte compradora el depósito de CINCO MIL DÓLARES ($5,000.00) sin intereses y se sujeta a los daños probados en el Tribunal de Primera Instancia, Sala de Aguadilla. [...][7]
(Énfasis y subrayado suplido)

En atención a lo antes descrito, la normativa vigente establece que si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, debe entenderse al sentido literal de sus palabras. 31 LPRA sec. 6342. Sin embargo, si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado. *Íd.* En este sentido, el contrato convenido se intitula Promesa Bilateral de Compraventa. Sabemos que la promesa bilateral de compraventa tiene la naturaleza de un contrato preparatorio, en el cual se emplea la obligación de hacer, pero no de dar ya que el objeto de realizar en el futuro es un contrato de compraventa. *Soto v. Rivera, supra,* págs. 509-510; 31 LPRA sec. 9756. Por otro lado, el referido contrato establece que las partes convienen la compraventa de la propiedad descrita y lo llevan a efecto en ese acto.

A su vez, las partes acordaron que el término del contrato, esta vez denominado "Opción", sería de un (1) año. Igualmente, se estableció que la escritura pública de compraventa se otorgaría dentro del plazo establecido para la "Opción". Sin embargo, según los términos del negocio jurídico no se le atribuyó a una sola de las partes la facultad de decidir sobre la celebración del contrato futuro o que "decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa". 31 LPRA sec. 9756, 8821. De este modo, ante la imposibilidad de los Peticionarios de inscribir las propiedades, entiéndase restablecer el tracto en el Registro de la Propiedad y el CRIM, el Recurrido a su discreción podría realizar las gestiones pertinentes. Entonces, cabría igualmente interpretar que las partes se obligaron a la celebración de un contrato futuro una vez finalizado el proceso de inscripción de las propiedades, a saber, la compraventa. 31 LPRA sec. 9756. En cambio, en la carta dirigida al señor Ramón Rosa con fecha de 4 de agosto

---

[7] *Véase*, Apéndice del Recurso, Entrada Núm. 1.

de 2025, los Peticionarios notificaron la terminación del Contrato y constataron que ese mismo día le solicitaron al Recurrido el pago por la suma de $85,000.00. Así las cosas, subrayamos que para determinar la intención debe atenderse principalmente a la conducta de la parte, ya sea anterior, coetánea o posterior al otorgamiento del negocio jurídico. 31 LPRA sec. 6342.

Además, es en virtud de la aludida misiva que el Recurrido alega que advino por primera vez en conocimiento de la terminación unilateral del Contrato y de la supuesta imposibilidad de inscripción de las propiedades. En cuanto a la reclamación de daños, surge del expediente que el señor Román Rosa presentó la demanda de epígrafe a los nueve (9) días de haber recibido la referida carta dentro del término de prescripción de un (1) año. 31 LPRA sec. 10801. Respecto a la acción por incumplimiento contractual, enfatizamos que contrario a lo expuesto por los Peticionarios, las acciones personales de todo tipo prescriben a los cuatro (4) años, excepto cuando la ley establezca un plazo distinto. 31 LPRA sec. 9495.

A tales efectos, es norma reiterada que para que prospere una moción de desestimación conforme a la Regla 10.2 (5), *supra*, debe establecerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que pueda probarse en apoyo a su reclamación. *BPPR v. Cable Media, supra*. Así, se busca evitar que el litigante sea privado de su día en corte, dado que la medida solo resulta procedente en casos extremos. *Costas Elena y otros v. Magic Sport y otros, supra*, pág. 534. De manera que, al tenerse como ciertas las alegaciones consignadas en la *Demanda* y al evaluarse de la manera más favorable y liberal a favor del Recurrido, existe una causa de acción en contra de los Peticionarios. 32 LPRA Ap. V, R. 10.2. En consecuencia, colegimos que actuó correctamente el TPI al denegar la solicitud de desestimación presentada por los Peticionarios. Por tanto, el primer y tercer error no fueron cometidos.

En cuanto al segundo señalamiento de error, concluimos que a la luz de los criterios establecidos en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, carecemos de facultad para intervenir en la determinación del foro primario respecto a la consignación de fondos. *In re Aprob.*

*Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025); 32 LPRA Ap. V, R.52.1.

**IV.**

Por los fundamentos que anteceden, los que hacemos constar en este dictamen, se *confirma* el auto de *Certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones